**Dominic M. FRANZA, Petitioner,**

v.

**James STINSON, Superintendent, Respondent.**

No. 98 CIV. 5484(LAK).

United States District Court, S.D. New York.

July 1, 1999.

---

## ORDER

KAPLAN, District Judge.

Petitioner was convicted in 1992 in the Supreme Court of the State of New York of three counts of attempted murder in the second degree and one count of criminal possession of a dangerous weapon in the first degree and sentenced to consecutive terms of 8–1/3 to 25 years for each attempted murder count and 3 to 9 years for the weapons count. He has unsuccessfully exhausted his appellate remedies in the state system and been unsuccessful as well with state post-conviction applications and now seeks habeas in this Court. His petition, exclusive of voluminous exhibits, is 74 pages in length. He asserts two grounds for relief: (1) the state court deprived petitioner of due process and equal protection by denying his post-conviction application under Crim. Proc. L. § 440.10, and (2) he allegedly received the ineffective assistance of appellate counsel in the state system. The latter argument, however, effectively incorporates virtually all of the many contentions petitioner and his counsel made in all of the prior state proceedings on the theory that those which appellate counsel raised were not raised adequately and that the failure to raise the others was deficient performance.

In a thorough 59–page report, Magistrate Judge Peck has recommended the denial of the petition. Franza has filed lengthy objections, largely reiterating his previous arguments. Only two points warrant any comment by the undersigned.

First, it appears that one of petitioner's many ineffective assistance arguments is that his appellate counsel did not argue adequately the alleged insufficiency of the evidence to support the conviction. Magistrate Judge Peck disagreed with the contention, but then went on to say, in the alternative, that "[e]ven if Franza's appellate counsel should have made a 'better' sufficiency of the evidence argument . . ., Franza can show no prejudice because the evidence was constitutionally sufficient." (R & R at 18) With respect, it is at least arguable that the proper measure of prejudice for purposes of an ineffective assistance of appellate counsel contention is not whether the evidence was sufficient to sustain a conviction, but whether a constitutionally sufficient performance probably would have led to a different result. *See Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whatever the precise standard, however, petitioner has failed to satisfy either prong of the *Strickland* test.

Second, petitioner argues that his confrontation rights were violated because a pretrial suppression hearing was reopened on February 13, 1992 and concluded in his absence. Magistrate Judge Peck concluded that the record shows that petitioner in fact was present, largely on the basis of the presumption of regularity that attaches to New York criminal proceedings. (R & R at 37–39) It seems to the undersigned, however, that the record is not quite so clear.

On January 21, 1992, the trial court conducted a hearing on petitioner's motions to suppress his statements to the police, papers seized from his person inci-

dent to arrest, and items seized pursuant to federal search warrants. (Pet. Ex. 33, at 4) It subsequently issued an opinion denying the motions. (*Id.*) Jury selection began on February 10, 1992. (*Id.* Ex. 38)

On February 13, 1992, during the *voir dire*, petitioner's counsel moved to reopen the hearing to resume cross-examination of one of the detectives after being supplied with new *Rosario* material. (*Id.* Ex. 37, at 111) The transcript of the reopened hearing appears as Exhibit 37 to the petition and consists of pages 110 through 133 of the minutes for that date. The balance of the transcript for that day has not been supplied to the Court.

The respondent's memorandum in this Court states that petitioner was present, but cites only to Exhibit 37 in support of that assertion. (Resp.Mem.24) Exhibit 37, the excerpt from the February 13, 1992 minutes before the Court, in fact does not reflect, one way or the other, whether petitioner was present, although of course his counsel was present and concluded the cross-examination of the detective. The Court therefore has reviewed the People's brief to the Appellate Division in hope of greater enlightenment. But the People there first stated that "pages 110–111 plainly note show [*sic*] that defendant was present for the reopened hearing," which is manifestly incorrect. They went on to buttress that assertion by stating that "when the jury panel entered [presumably after the conclusion of the reopened hearing], the court introduced defendant," thereby demonstrating that he was present. For the latter point they cite pages 137 and 138 of the minutes for February 13. Unfortunately, neither party has made those pages of the transcript part of the record. Accordingly, the Court assumes, without deciding, that petitioner was not present during the reopened cross-examination of Detective Georgio by petitioner's counsel, which covered 23

pages of transcript on February 13, 1992. This assumption is far from sufficient to justify disturbing petitioner's convictions, however.

In order to prevail on his contention that petitioner's appellate counsel performed in a constitutionally deficient manner, petitioner has the burden of rebutting the "strong presumption that counsel's conduct came within the wide range of reasonable professional assistance ..." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. If, as the People's Appellate Division brief stated, pages 137–38 of the transcript show that petitioner in fact was present, appellate counsel obviously is not to be faulted for not advancing the argument because the argument would have been doomed to failure. But the same is true even if the record simply was inconclusive. There would have been no evidentiary basis for asserting that petitioner's confrontation rights had been violated because the record failed to support the claim. Moreover, even if the record conclusively had established petitioner's absence during the brief reopened portion of the hearing, counsel would have been justified in declining to assert the claim because the argument for reversal based on this absence would have been weak.

While an accused has a constitutional right to be present "at every stage of his trial,"[1] and while courts typically have taken a broad view in *determining* whether particular aspects of a criminal prosecution are parts of the "trial" for this purpose,[2] violations of that right will not lead to reversal if the error was harmless beyond a reasonable doubt. *E.g., United States v. Toliver,* 541 F.2d 958 (2d Cir.1976); *Ware v. United States,* 376 F.2d 717 (7th Cir. 1967). Here, the portion of the proceeding from which the petitioner claims to have been absent was very brief. His attorney was present. Review of the record reveals

---

1. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

2. *See United States v. Gagnon,* 470 U.S. 522, 526–27, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985).

the commission of no legal error during petitioner's absence and no reason to suppose that petitioner's presence would have altered the result of the suppression hearing, much less the case. Accordingly, this Court is satisfied that any error in proceeding in petitioner's absence, if that actually occurred, was harmless beyond a reasonable doubt. His appellate counsel therefore would have been entirely justified in not raising the issue. In any case, there was no prejudice. In these circumstances, there is no need to consider whether the failure of petitioner's counsel to object to proceeding with the reopened hearing in petitioner's absence, if absent he was, could waive petitioner's right to be present.

With the foregoing qualifications, the petition is denied substantially for the reasons set forth in Magistrate Judge Peck's report and recommendation. As petitioner has presented no substantial constitutional question, a certificate of appealability is denied, and the Court certifies that any appeal from this order would not be taken in good faith for purposes of 28 U.S.C. § 1915.

SO ORDERED.

## REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Petitioner Dominic Franza was convicted of three counts of second degree attempted murder and one count of weapon's possession in connection with the attempted murders of Franza's estranged wife, Myra Franza, and her family. Franza's present habeas petition alleges that he was denied effective assistance of appellate counsel, and that the state courts' denial of his CPL § 440.10 post-conviction motion violated his rights to due process and equal protection.

For the reasons set forth below, I recommend that Franza's petition be denied on the merits.

## FACTS

### The Trial Evidence

At 7:15 P.M. on July 17, 1990, an unidentified man pretended to deliver roses to Myra Franza, Franza's estranged wife, at her mother, Josephine Mendez's apartment. (Trial Transcript ["Tr."] 224, 265–70, 272, 281–82, 284–85, 313.) When Mendez opened the apartment door, the man followed Mendez into the apartment, stabbed her and shot her five times (once in the face), and shot Myra Franza once in the face. (Tr. 224–29, 248, 313, 315, 323–24.) The man fled, leaving behind the roses and the note attached to the flower box, which handwriting analysis showed had been written by Franza. (Tr. 159, 228, 282, 668, 1200–11, 1442–43.) Myra Franza told the police that Franza sent the man to kill her because she left him. (Tr. 147–48, 150, 158, 314–15.)

On August 11, 1990, a pipe bomb was left outside the apartment of Myra Franza's brother, Nelson DaCosta, at 644 West 185th Street. (Tr. 666–68, 731, 773–74, 785, 788–89.)

On February 6, 1991, two letters arrived at Mendez's apartment, one addressed to Myra Franza c/o Mendez and one to her brother DaCosta c/o Mendez, threatening to kill Myra Franza, her parents, her brother, and her grandmother in Puerto Rico. (Tr. 237–43, 274–77; Franza Pet. Exs. 5(40)-(41): Letters to Myra Franza and DaCosta.) Each envelope bore a twenty-five cent stamp and two three-cent stamps (postage rates having just gone up from 29¢ to 31¢). (Tr. 819–20, 1266; Franza Pet. Ex. 5(42): Envelope addressed to DaCosta.) The typed letters were purportedly from a "Julio Ortiz," but the handwritten envelopes bore "strong similarities" to Franza's handwriting. (Tr. 239, 243, 1304–06, 1427–29, 1446, 1450–53.)

On February 8, 1991, Federal Express delivered a pipe bomb to Mendez's sister in Puerto Rico, intended for Myra Franza's grandmother, from "Julio Ortiz" of

"U.S.A. Electronics." (Tr. 763–70, 890–91.)

On February 11, 1991, the police arrested Franza for the attempted murders of Myra Franza and Mendez. (Tr. 730, 788, 814–15.) When Franza was arrested he had on him Myra Franza's grandmother's address in Puerto Rico. (Tr. 622–24, 732–33, 842.) Franza furnished handwriting exemplars which, according to the police handwriting expert, established that Franza wrote the note accompanying the flowers delivered to Myra Franza when she and Mendez were shot, as well as the Federal Express airbill listing the sender of the Puerto Rico pipe bomb as "Julio Ortiz" of "U.S.A. Electronics," and the money order used to pay for shipping the pipe bomb to Puerto Rico. (Tr. 890–93, 1199–236, 1346–48, 1376–77, 1421–24, 1441–47.)

On February 12 and 14, 1991, the authorities obtained search warrants for Franza's apartment. (Tr. 777–79, 810, 812–13, 821, 847–48, 868–69, 873–77.) The police recovered: a green marker (Tr. 812, 813, 815, 827–28, 858, 867, 927–28) and black electrical tape (Tr. 811, 813, 816, 828, 858, 866–67, 880, 927, 993, 1000), consistent with the ink and tape used on the Puerto Rico pipe bomb (Tr. 927, 975–78, 1000–06, 1011–21); smokeless gunpowder (Tr. 811–13, 815, 834–35, 858, 865, 927); a sheet of three-cent stamps (Tr. 778, 810, 813, 822–23, 828–29, 855–56, 858, 927) which matched the stamps on the threatening letters (Tr. 819–20, 822–23, 837, 1264–302, 1429–40); a list of books on explosive devices (Tr. 852–55); handwritten and typewritten papers (Tr. 812, 816, 850–51, 858, 862, 864, 881–83, 927), including a piece of paper with the name "Julio Ortiz" written on it along with the town in which Myra Franza's grandmother lived and her telephone number (Tr. 858–60, 937–38); indented writing on a piece of paper with DaCosta's name, address, height, weight, wife's name, cross streets and the words "shoot" and "Julio Ortiz" on it (Tr. 1237–53, 1257–63); a business card from U.S.A. Electronics (Tr. 862–63); and firecrackers that were similar to firecrackers used as a fuse in the DaCosta pipe bomb (Tr. 875–81, 941, 982–85, 995–1000).

The jury convicted Franza of attempted murder of Myra Franza, Mendez and DaCosta, and of criminal possession of a weapon. (Tr.1994–98.) *See People v. Franza*, 239 A.D.2d 201, 201, 658 N.Y.S.2d 4, 5 (1st Dep't 1997). On April 8, 1992, the trial judge sentenced Franza to consecutive terms of 8–1/3 to 25 years for each attempted murder count, and 3 to 9 years for the weapons count. (Pet.¶¶ 3–4.) *See People v. Franza*, 239 A.D.2d at 201, 658 N.Y.S.2d at 5.

### Franza's CPL § 440.10 Motion to Set Aside the Verdict

On June 17, 1993, Franza filed a pro se motion with the trial judge to vacate the judgment pursuant to CPL § 440.10. (Franza Pet. Ex. 6: Franza 6/17/93 Pro Se 440.10 Mot.) Franza argued that: (1) the court did not have jurisdiction; (2) "[t]he judgment was procured by Fraud on the part of the Prosecutor"; (3) fabricated evidence was introduced at trial; (4) the evidence was procured "in violation of the Defendant's rights under the [New York and federal] Constitution[s];" (5) "[i]mproper and prejudicial conduct not appearing in the record occurred during trial [which] . . . required a reversal of the judgment;" (6) "[n]ew [e]vidence has been discovered;" and (7) "[t]he judgment was obtained in violation of a right of the Defendant under the [state and federal] Constitution[s]." (Franza Pet. Ex. 6: Franza 6/17/93 Pro Se 440.10 Mot. at 1–2.)

On October 19, 1993, the trial judge denied Franza's CPL § 440.10 motion, holding:

[Franza] has appealed his conviction to the Appellate Division, First Department where it is pending. [Franza] now moves pursuant to C.P.L. § 440.10 to set aside this judgment, making a litany of claims which more or less track the statutory language. This motion is made

pro se, yet I have assigned [Franza's] appellate counsel to assist him with this [CPL § ] 440.10 motion. The People oppose both a hearing and the ultimate relief defendant seeks.

This Court is wholly familiar with the trial and the evidence presented, as well as the comportment of counsel on both sides of the aisle.

[Franza's] claims for a hearing or a new trial are based largely on completely unsubstantiated charges of fraud and collusion leveled against the D.A. and defense counsel, alleging fabricated, altered and withheld evidence resulting in his conviction. Attendant to this are claims of ineffective assistance of counsel. In addition, defendant asserts through a byzantine re-analysis of the People's evidence at trial that he could not logically be guilty.

[Franza's] motion is denied in all respects. Firstly, C.P.L. [§ ] 440.10(2)(b) mandates denial when, "The judgment is, at the time of the motion, appealable or pending an appeal, and sufficient facts appear on the record ... to permit adequate review thereof upon such appeal ... [.]"

As [Franza's] case is on direct appeal and no grounds exist to necessitate a hearing to enlarge the record, the motion is denied. The Court also notes that a review of the record at trial indicates that all of [Franza's] specified claims are without merit. [Franza's] claims of a conspiracy between counsel to convict him are nothing but self-serving, wishful thinking. In fact, both the Prosecutor and defense counsel did exemplary work at trial. Finally, the evidence of defendant's guilt was overwhelming. Motion is denied in all respects.

1. On March 7, 1996, Franza moved to dismiss Reich because of alleged errors and omitted arguments in his draft appellate brief. (Franza Pet. Ex. 29: Franza Mot. to Dismiss Appellate Counsel; *see also* Pet. Exs. 30–31: Franza Addenda to Motion to Dismiss Appellate Counsel.) The First Department denied Fran-

(Franza Pet. Ex. 18: Justice Paul Bookson 10/19/93 Decision.)

On December 16, 1993, the First Department granted Franza leave to appeal from the trial court's denial of his CPL § 440.10 motion, and consolidated Franza's CPL § 440.10 appeal with his direct appeal. (State App. Ex. B: 12/16/93 1st Dep't Certificate Granting Leave to Appeal.)

### Franza's Direct Appeal

On June 10, 1996, Franza appealed to the First Department, represented by new counsel, Perry Reich.[1] (Franza Pet. Ex. 3: Franza 1st Dep't Br.) Reich argued on Franza's behalf that: (1) the circumstantial evidence was insufficient to support the verdict (*id.* at 20–23); (2) there was no probable cause to issue the search warrants for Franza's apartment and so Franza's suppression motion should have been granted (*id.* at 24–26); (3) erroneous evidentiary rulings deprived Franza of a fair trial (*id.* at 27–37); (4) the trial court incorrectly charged the jury on the circumstantial evidence standard (*id.* at 38–40); and (5) consecutive sentences were inappropriate (*id.* at 41–42). Franza submitted a pro se supplemental brief to the First Department, arguing that the trial court erred by denying his CPL § 440.10 motion. (Franza Pet. Ex. 2: Franza Pro Se 1st Dep't Br. at 37–59.)

On May 13, 1997, the First Department affirmed Franza's conviction, holding:

The circumstantial evidence of guilt, including several highly incriminating items of handwriting evidence, was legally sufficient, and the verdict was not against the weight of the evidence. Defendant's contention that there was no probable cause for the issuance of a search warrant for his apartment is without merit, since, under the circum-

za's motion on June 6, 1996, noting that Reich was assigned only after previous appellate counsel was relieved. (Franza Pet. Ex. 32: 1st Dep't 6/6/96 Order.) The First Department, however, permitted Franza to file a pro se supplemental appeal brief. (*Id.*)

stances, it was reasonable to conclude that the items used to make the pipe-bomb would be found in his residence. The court's charge on the circumstantial evidence conveyed the appropriate standards. We perceive no abuse of discretion in sentencing. We have considered defendant's remaining contentions, including those addressed to the denial of his motion to vacate judgment, and find them to be without merit.

*People v. Franza*, 239 A.D.2d 201, 202, 658 N.Y.S.2d 4, 5 (1st Dep't 1997) (citations omitted).

On June 6, 1997, Franza pro se sought leave to appeal. (Franza Pet. Ex. 26: Franza 6/6/97 Letter–Brief to Chief Judge Kaye.)[2] On August 25, 1997, the Court of Appeals denied leave to appeal. (State App. Ex. E: Cert. Denying Leave to Appeal.) *See People v. Franza*, 90 N.Y.2d 904, 663 N.Y.S.2d 516, 686 N.E.2d 228 (1997).

### Franza's State Petition for a Writ of Error Coram Nobis

On November 10, 1997, Franza petitioned the First Department for a writ of error coram nobis, alleging that he was denied effective assistance of appellate counsel. (Franza Pet. Exs. 27–28: Franza Coram Nobis Aff. & Br.)[3]

In an affidavit and a brief totaling 224 pages, Franza argued that appellate counsel failed to provide effective assistance on numerous grounds: (1) appellate counsel's argument that the circumstantial evidence was insufficient to support the verdict was "merely 90 typed lines and 3–1/2 pages long," fails to cite the relevant facts or "a single [f]ederal case", and was ineffective as evidenced by the First Department's opinion affirming Franza's conviction without addressing this issue (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 23–39; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 48–53); (2) appellate counsel's argument that there was no probable cause to issue the search warrant was only "66 typed lines and 2 ½ pages long" and did not mention key facts (Coram Nobis Aff. ¶¶ 40–47; Coram Nobis Br. at pp. 54–56); (3) appellate counsel's argument that erroneous evidentiary rulings deprived Franza of a fair trial was only "268 lines and 11 pages long," fails to recite the relevant facts, and the First Department found it to be without merit (Coram Nobis Aff. ¶¶ 48–54; Coram Nobis Br. at pp. 56–57); (4) appellate counsel's argument that the circumstantial evidence charge was flawed was only "120 lines and 3 pages," cites only state law, did not adequately cite to the record, and failed to address the issue that "the Court entirely failed in its entire charge to convey ... that any circumstantial evidence fact not so proved must be disregarded" (Coram Nobis Aff. ¶¶ 56–61; Coram Nobis Br. at pp. 57–59); (5) appellate counsel failed to argue that the trial court erroneously rejected Franza's CPL § 440.10 motion (Coram Nobis Aff. ¶¶ 62–63; Coram Nobis Br. at pp. 59–60, 117–27); (6) appellate counsel failed to argue that the state did not prove intent, motive or guilt beyond a reasonable doubt and omitted cer-

**2.** Franza directed appointed appellate counsel Reich not to file an application for leave to appeal, and so advised the Court of Appeals. (State App. Ex. F: 4/29/97 Franza Letter to Ct.App.)

**3.** Franza also filed three state habeas corpus petitions in New York Supreme Court, Washington County. (Pet. at pp. 8–9.) Franza's first such petition, which argued that denial of his second CPL § 440.10 motion violated his due process rights, was denied on October 12, 1995. (Pet. at p. 8.) Franza's second such petition, which argued that a pre-trial hearing was held in his absence, violating due process

was denied on September 18, 1996. (*Id.*) Franza's third state habeas petition, which argued that the court improperly read back testimony to the jury, violating his due process rights, was denied on September 22, 1996. (*Id.* at p. 9.) All three petitions were denied on procedural grounds without reaching the merits. (Franza Traverse ¶ 40.) Franza appealed from the denial of the first two state habeas petitions but not from the third. (Pet. at p. 9.) The Third Department denied the appeals on June 17, 1996 and May 1, 1997. (Franza Pet. Ex. 43: 3d Dep't Orders.)

tain relevant facts from his analysis (Coram Nobis Aff. ¶¶ 31–33, 66–172, 295–307; Coram Nobis Br. at pp. 61–86, 127–30); (7) appellate counsel failed to argue that the trial court improperly read back portions of the handwriting expert's testimony to the jury and gave the jury an improper exhibit (Coram Nobis Aff. ¶¶ 173–91; Coram Nobis Br. at pp. 86–91); (8) appellate counsel failed to argue that a secret pretrial hearing was held outside of Franza's presence (Coram Nobis Aff. ¶¶ 192–204; Coram Nobis Br. at pp. 91–94); (9) appellate counsel failed to argue that trial counsel was ineffective for not objecting to the prosecutor's allegedly improper summation (Coram Nobis Aff. ¶¶ 205–51; Coram Nobis Br. at pp. 94–116); and (10) appellate counsel failed to argue that trial counsel was ineffective for not seeking to submit a first degree assault charge to the jury (Coram Nobis Aff. ¶¶ 309–18; Coram Nobis Br. at pp. 130–32).

The First Department summarily denied Franza's coram nobis petition on June 11, 1998. (Franza Pet. Ex. 42: 1st Dep't 6/11/98 Opinion.)

**Franza's Federal Habeas Petition**

Franza's instant federal habeas petition raises the same claims and rationale that he presented in his CPL § 440.10 appeal and coram nobis petition to the First Department: (1) he was denied effective assistance of appellate counsel (Pet.¶ 12(B); Franza Br. at 86–95; Franza Traverse Br. at 15–16), and (2) the trial court's denial of his CPL § 440.10 motion violated his due process and equal protection rights (Pet. ¶ 12(A); Franza Br. at 73–86; Franza Traverse Br. at 1–15).[4] The underpinning of Franza's claims is that he "was framed," there was a conspiracy between the prose-

cutor and defense counsel to use false evidence, and the "Trial Court was clearly biased against [Franza], working for the State." (*See* Franza 2/12/99 Reply Aff. ¶¶ 3, 4, 7, 9, 13, 15.)

## ANALYSIS

### I. *FRANZA'S APPELLATE COUNSEL WAS NOT INEFFECTIVE* UNDER *THE STRICKLAND V. WASHINGTON TEST*

#### A. The Strickland v. Washington Standard

The Supreme Court has announced a two-part test to determine if counsel's assistance was ineffective. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* This performance is to be judged by an objective standard of reasonableness. *Id.*, 466 U.S. at 688, 104 S.Ct. at 2064.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of rea-

4. On January 30, 1999, Franza requested over 100 pre-trial documents that he claims are necessary to prove his case. (Franza 1/30/99 Disc. Mot. & Ex. A; *see also* Franza 2/12/99 Reply Aff.) Franza concedes that the documents were given to his trial counsel, but claims that trial counsel will not give them to Franza. (*See* Franza 2/12/99 Reply Aff. ¶¶ 3, 4, 5, 7, 15.) Franza's motion is denied as

none of the documents he requests would enable him to establish any of the claims set forth in his habeas corpus petition.

In addition, Franza's March 29, 1999 renewed motion for bail pending determination of his habeas corpus writ is denied, since the Court recommends that his habeas corpus petition be denied.

sonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* 466 U.S. at 689, 104 S.Ct. at 2065; *accord, e.g., Torres v. Irvin,* 33 F.Supp.2d 257, 277 (S.D.N.Y.1998) (Cote, D.J. & Peck, M.J.).

Second, the defendant must show prejudice from counsel's performance. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. at 2064. The "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.,* 466 U.S. at 695, 104 S.Ct. at 2068–69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* 466 U.S. at 694, 104 S.Ct. at 2068.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.,* 466 U.S. at 695–96, 104 S.Ct. at 2069 (emphasis added); *see also, e.g., DeLuca v.*

*Lord,* 77 F.3d 578, 584 (2d Cir.), *cert. denied,* 519 U.S. 824, 117 S.Ct. 83, 136 L.Ed.2d 40 (1996); *Torres v. Irvin,* 33 F.Supp.2d at 277.

The Supreme Court has counseled that these principles "do not establish mechanical rules." *Strickland v. Washington,* 466 U.S. at 696, 104 S.Ct. at 2069. The focus of the inquiry should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process. *Id.* The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one .... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.,* 466 U.S. at 697, 104 S.Ct. at 2069; *accord, e.g., Torres v. Irvin,* 33 F.Supp.2d at 277.

In addition, the Supreme Court also has counseled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington,* 466 U.S. at 690–91, 104 S.Ct. at 2066; *see also, e.g., Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982) ("We have long recognized ... that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); *Jackson v. Leonardo,* 162 F.3d 81, 85 (2d Cir.1998) ("In reviewing *Strickland* claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not

the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on ... counsel a duty to raise very "colorable" claim' on appeal.") (citations omitted); *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices."), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994).

■ The *Strickland* test applies to appellate as well as trial counsel. *See, e.g., Mayo v. Henderson,* 13 F.3d at 533; *Torres v. Irvin,* 33 F.Supp.2d at 277; *Hurd v. Keane,* 97 Civ. 2991, 1997 WL 582825 at *2 (S.D.N.Y. Sept.19, 1997); *Ehinger v. Miller,* 942 F.Supp. 925, 932 (S.D.N.Y.1996) (Mukasey, D.J. & Peck, M.J.); *Benn v. Stinson,* 917 F.Supp. 202, 205 (S.D.N.Y. 1995) (Stein, D.J. & Peck, M.J.).

■ Appellate counsel is not required to raise every colorable claim urged by the client, but is entitled to focus on key issues while winnowing out weaker arguments. *E.g., Jones v. Barnes,* 463 U.S. 745, 751–53, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983); *Jackson v. Leonardo,* 162 F.3d at 85; *Mayo v. Henderson,* 13 F.3d at 533; *Torres v. Irvin,* 33 F.Supp.2d at 278; *Hurd v. Keane,* 1997 WL 582825 at *2; *Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206. Further, reviewing courts should not second guess the reasonable professional judgments of appellate counsel as to the most promising appeal issues. *E.g., Jones v. Barnes,* 463 U.S. at 754, 103 S.Ct. at 3314; *Tsirizotakis v. LeFevre,* 736 F.2d 57, 65 (2d Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984); *Torres v. Irvin,* 33 F.Supp.2d at 278; *Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206. Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."

*Mayo v. Henderson,* 13 F.3d at 533; *see also, e.g., Jackson v. Leonardo,* 162 F.3d at 85; *Torres v. Irvin,* 33 F.Supp.2d at 278; *Hurd v. Keane,* 1997 WL 582825 at *2; *Ehinger v. Miller,* 942 F.Supp. at 932; *Benn v. Stinson,* 917 F.Supp. at 206.

### B. *Application of the Strickland Standard to Franza's Ineffective Assistance of Appellate Counsel Claims*

Franza uses his habeas petition to recount all of the arguments he made in his prior state court motions, but Franza does not clearly articulate the grounds for his current ineffective assistance of appellate counsel claim in either his petition or supporting brief. Since the Court must liberally construe pro se petitions, the Court assumes that Franza argues in his current habeas petition the same laundry list of ineffective assistance of appellate counsel claims that he raised in his coram nobis petition, summarized at pages 7–9 above.

■ As a preliminary matter, Franza points to the First Department's rejection of several of appellate counsel's arguments as proof that counsel was ineffective. (*E.g.,* Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 20, 53; Franza Pet. Ex. 28: Coram Nobis Br. at p. 57.) That argument is frivolous. Even a Clarence Darrow or Arthur Liman lost cases. In every case, no matter how good the lawyers, one side prevails and one side loses, but that is no evidence that the losing lawyer was ineffective. The First Department's rejection of Franza's appeal is not evidence that his appellate counsel was ineffective. *See, e.g., Torres v. Irvin,* 33 F.Supp.2d 257, 279 (S.D.N.Y.1998) (Cote, D.J. & Peck, M.J.) ("Appellate counsel's lack of success on appeal provides no reason to second-guess his judgment in raising these issues."); *Cruz v. Artuz,* No. CV 96–5209, 1997 WL 269591 at *4 (E.D.N.Y. April 21, 1997) ("lack of success on appeal is not a basis to impugn appellate counsel's reasonable choices or performance"), *aff'd,* 133 F.3d

906 (2d Cir.1997); *Vasquez v. United States,* 96 Civ. 2104, 1996 WL 694439 at *7 (S.D.N.Y. Dec.3, 1996) ("[th]e fact that [counsel's] argument was not accepted by the Court does not reflect poor advocacy or a performance falling below an objective standard of reasonableness"); *Ehinger v. Miller,* 942 F.Supp. 925, 933 (S.D.N.Y. 1996) (Mukasey, D.J. & Peck, M.J.); *Benn v. Stinson,* 917 F.Supp. 202, 207 (S.D.N.Y. 1995) (Stein, D.J. & Peck, M.J.) ("[d]efense counsel's lack of success on appeal provides no reason to second-guess his judgment in raising these issues"); *Salerno v. United States,* 870 F.Supp. 549, 553 (S.D.N.Y.1994) ("the fact that [counsel] was not successful with respect to every argument he made, without more, is hardly sufficient to support a claim of ineffective assistance of counsel"); *Curzi v. United States,* 773 F.Supp. 535, 542 (E.D.N.Y. 1991) ("the lack of success of a chosen strategy should not cause a court to second-guess an attorney's reasonable judgments"), *aff'd,* 973 F.2d 107 (2d Cir.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

**1. *Appellate Counsel's Sufficiency and Weight of the Evidence Argument***

Franza alleges that counsel's sufficiency and weight of the evidence argument was too short and failed to cite to the relevant facts and federal case law, and that the First Department's rejection of counsel's argument establishes that it was ineffective. (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 23–39; Franza Pet. Ex. 28: Coram Nobis Br. at 48–53.) Franza also contends that counsel failed to argue that the state did not prove intent, motive or guilt beyond a reasonable doubt. (Coram Nobis Aff. ¶¶ 31–33, 66–172, 295–307; Coram Nobis Br. at pp. 61–86, 127–30.)

Appellate counsel also made the reasonable strategic decision to challenge the sufficiency of the government's evidence under the more lenient state law "weight of the evidence" standard,[5] rather than arguing under the more stringent federal constitutional standard that the evidence was not legally sufficient to support a finding of guilt beyond a reasonable doubt.[6]

Appellate counsel aptly recited the relevant facts and case law, emphasizing that only the handwriting expert's opinion connected Franza to the attempted murder of Myra Franza and Mendez. (Franza Pet. Ex. 3: Franza 1st Dep't Br. at 21.) He also argued that there was no evidence Franza had the finances to hire a killer; just because Franza was a gun buff and had gunpowder in his apartment was meaningless since that powder did not match the powder in either pipe bomb; Franza had no motive to kill his estranged wife because he had a girlfriend; and DaCosta used drugs and had enemies who could have committed the attempted murders. (*Id.* at 21–23.) These arguments, which utilized the same strategy that trial counsel had employed (*see, e.g.,* Tr. 318–19, 1763–76, 1773, 1779–81, 1792–94, 1800–11), hardly bespeak professional incompetence.

---

5. *See, e.g., People v. Bleakley,* 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 763, 508 N.E.2d 672 (1987) (In determining whether a verdict is supported by the weight of the evidence, "[e]ven if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.' If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict.") (citations omitted).

6. *See, e.g., Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (to determine whether the evidence is legally sufficient to support a finding of guilt beyond a reasonable doubt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

Further, contrary to Franza's assertions, counsel did argue that the state's proof of motive was discredited by Franza's subsequent romance with another woman. (Franza Pet. Ex. 3: Franza 1st Dep't Br. at 22.) In addition, counsel argued that it was "just as likely that someone desiring to even the score with Nelson DaCosta, defendant's brother-in-law, was at the center of these crimes," and referred to the evidence that supported this theory. (*Id.* at 22–23.) Counsel's decision to concentrate on the two arguments he thought most persuasive—insufficiency of the evidence and lack of motive—and not to discuss intent, was purely strategic. Further, if the evidence was sufficient to link Franza to having sent a hit man to shoot his estranged wife and her mother and sent a pipe-bomb to her brother, it would have been a herculean task for counsel to show that Franza did not have the mens rea (intent) necessary for attempted murder.

Franza also contends that appellate counsel failed to argue that although Myra Franza claimed he threatened to kill her, she returned home to him shortly thereafter (Franza Pet. Ex. 27: Coram Nobis Aff. ¶ 32; Franza Pet. Ex. 28: Coram Nobis Br. at 51), but does not explain why that should have been argued to the First Department. Franza also claims that appellate counsel should have "state[d] the substance of [Franza's] threats" to Myra Franza, *i.e.*, "that he would kill her ... [v]ery importantly, revealing the fact Mrs. Franza nor anyone ever claimed [Franza] said he would send others, during the threats." (Coram Nobis Aff. ¶ 32; Coram Nobis Br. at 51.) It is not surprising to the Court that effective counsel, as a matter of strategy, would chose *not* to highlight evidence of Franza's threats to his wife. Franza's argument, before a jury or even appeals court, would involve a very risky strategy, and appellate counsel was not ineffective for choosing not to adopt that strategy. *See, e.g., United States v. Morales*, 1 F.Supp.2d 389, 393 (S.D.N.Y.1998) ("[t]he

decision of experienced defense counsel not to call unwilling witnesses in a risky effort to collaterally challenge the credibility of one of the Government's witnesses is a matter of trial tactics that will not support a claim of ineffective assistance of counsel absent far more extreme circumstances"); *Nieves v. Kelly*, 990 F.Supp. 255, 265–66 (S.D.N.Y.1997) (Cote, D.J. & Peck, M.J.) (counsel's decision not employ risky alibi defense that prisoner could not have committed the robbery because he committed another robbery 10 minutes earlier did not constitute ineffective assistance); *Tusa v. Jones*, No. 93–CV–3862, 1996 WL 1088208 at *4 (E.D.N.Y. Sept.3, 1996) (counsel was not ineffective in refusing to call alibi witnesses whom the attorney had reason to believe would commit perjury or be unbelievable); *Ireland v. People of State of New York*, 91 Civ. 5641, 1994 WL 649157 at *4 (S.D.N.Y. Nov.16, 1994) (counsel's decision not to pursue "a defense based on an alleged police vendetta" was not ineffective because "[a]n attack on police motives is generally a risky defense strategy").

Even if Franza's appellate counsel should have made a "better" sufficiency of the evidence argument, however, Franza can show no prejudice, because the evidence was constitutionally sufficient.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979) (*quoting In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970)). However, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt ...." *Jackson v. Virginia*, 443 U.S. at 317, 99 S.Ct. at 2788. Accordingly, "in a challenge to a state criminal conviction brought un-

der 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324, 99 S.Ct. at 2791–92; *accord, e.g., Carromero v. Strack*, 98 Civ. 3519, 1998 WL 849321 at *4 (S.D.N.Y. Nov.19, 1998) (Preska, D.J. & Peck, M.J.); *Fernandez v. Dufrain*, 11 F.Supp.2d 407, 416 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.); *Williams v. Bennet*, 97 Civ. 1628, 1998 WL 236222 at * 4 (S.D.N.Y. April 20, 1998) (Baer, D.J. & Peck, M.J.); *Robinson v. Warden of James A. Thomas Ctr.*, 984 F.Supp. 801, 805 (S.D.N.Y.1997) (Sprizzo, D.J. & Peck, M.J.); *Ehinger v. Miller*, 942 F.Supp. 925, 935 (S.D.N.Y.1996) (Mukasey, D.J. & Peck, M.J.); *Vera v. Hanslmaier*, 928 F.Supp. 278, 284 (S.D.N.Y.1996) (Jones, D.J. & Peck, M.J.).

Petitioner Franza bears a "very heavy burden":

> [T]he standard for appellate review of an insufficiency claim placed a "very heavy burden" on the appellant. Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

*United States v. Carson*, 702 F.2d 351, 361 (2d Cir.) (citations omitted), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2456, 2457, 77 L.Ed.2d 1335 (1983); *accord, e.g., United States v. Rosa*, 11 F.3d 315, 337 (2d Cir. 1993) ("[D]efendant who makes a sufficiency challenge bears a heavy burden."), *cert. denied*, 511 U.S. 1042, 1096, 114 S.Ct. 1565, 1864, 128 L.Ed.2d 211 (1994); *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir.1993) (burden on defendant is " 'very heavy' " and all inferences must be drawn in the government's favor); *Carromero v. Strack*, 1998 WL 849321 at *4; *Fernandez v. Dufrain*, 11 F.Supp.2d at 416; *Williams v. Bennet*, 1998 WL 236222 at *4; *Robinson v. Warden*, 984 F.Supp. at 806; *Ehinger v. Miller*, 942 F.Supp. at 935; *Vera v. Hanslmaier*, 928 F.Supp. at 284. "[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 318–19, 99 S.Ct. at 2789 (quotations & citations omitted); *accord, e.g, Mallette v. Scully*, 752 F.2d 26, 31 (2d Cir.1984); *Williams v. Bennett*, 1998 WL 236222 at *4; *Robinson v. Warden*, 984 F.Supp. at 806; *Ehinger v. Miller*, 942 F.Supp. at 935; *Vera v. Hanslmaier*, 928 F.Supp. at 284.

Franza relies on the concession by the police handwriting expert that there is a "margin of error" in handwriting analysis. (*E.g.,* Coram Nobis Aff. ¶ 68.) The detective nevertheless testified unequivocally that the handwriting on the note attached to the flower box was Franza's writing. (Tr. 1199–212, 1442–43.) A reasonable jury could believe such testimony and find it sufficient to connect Franza to the shooting of his wife and her mother. *See, e.g., People v. Davis*, 49 N.Y.2d 910, 913, 428 N.Y.S.2d 195, 197, 405 N.E.2d 677 (1980) (evidence was sufficient to convict defendant of falsifying business records and grand larceny where prosecution showed, *inter alia*, that "the number of the supposedly missing [vehicle] stickers appeared in [defendant's] handwriting"); *People v. Becker*, 189 A.D.2d 881, 882–83, 592 N.Y.S.2d 764, 765 (2d Dep't) (pro-

motion of gambling and possession of gambling records proved beyond a reasonable doubt where prosecution introduced circumstantial evidence, including gambling records in the defendant's handwriting), *appeal denied*, 81 N.Y.2d 837, 595 N.Y.S.2d 736, 611 N.E.2d 775 (1993); *see also, e.g., Maldonado v. Scully*, 86 F.3d 32, 36 (2d Cir.1996) (rejecting petitioner's § 2254 claim that his conviction was invalid because no direct evidence established that he was an accessory to second degree murder, because "[v]iewed in its totality, the circumstantial evidence" was sufficient for a jury to find him guilty and "[g]uilt may … be proved entirely by circumstantial evidence … and a lack of direct evidence does not preclude a conviction on circumstantial evidence"); *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994) (rejecting petitioners' § 2254 claim that the evidence was insufficient since no physical evidence tied them to the murder, because " 'a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility' "), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Panaro v. Kelly*, 32 F.Supp.2d 105, 109 (W.D.N.Y.1998) (circumstantial evidence was sufficient to establish that petitioner was guilty of murder in the second degree beyond a reasonable doubt); *Fernandez v. Dufrain*, 11 F.Supp.2d 407, 417–18 (S.D.N.Y.1998) (Kaplan, D.J. & Peck, M.J.) ("the circumstantial evidence was sufficient for a jury to properly conclude that [petitioner] intended to kill [the deceased]").

More generally, the "jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss*, 999 F.2d at 696 (citing *United States v. Roman*, 870 F.2d 65, 71 (2d Cir.), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989)); *accord, e.g., Fernandez v. Dufrain*, 11 F.Supp.2d at 416; *Williams v. Bennet*, 1998 WL 236222 at *5; *Robinson v. Warden*, 984 F.Supp. at 806; *Ehinger v. Miller*, 942 F.Supp. at 935; *Vera v. Hanslmaier*, 928 F.Supp. at 284. The role of this Court is clear: " '[f]ederal habeas courts are not free to reassess the fact specific credibility judgments by juries or to weigh conflicting testimony. On collateral review this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.' " *Vera v. Hanslmaier*, 928 F.Supp. at 284 (quoting *Anderson v. Senkowski*, No. CV–92–1007, 1992 WL 225576 at *3 (E.D.N.Y.1992), *aff'd*, 992 F.2d 320 (2d Cir.1993)); *accord, e.g., Fernandez v. Dufrain*, 11 F.Supp.2d at 417; *Williams v. Bennet*, 1998 WL 236222 at *5; *Robinson v. Warden*, 984 F.Supp. at 806; *Ehinger v. Miller*, 942 F.Supp. at 935; *see also, e.g., United States v. Birrell*, 447 F.2d 1168, 1173 (2d Cir.1971) (where inconsistency in testimony was minor and "all that was involved was faulty memory on a comparatively insignificant point," inconsistency was a jury question that does not create a "reasonable doubt as to defendant's guilt as a matter of law."), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 675, 30 L.Ed.2d 675 (1972); *Fagon v. Bara*, 717 F.Supp. 976, 979 (E.D.N.Y.1989) (habeas court "is not free to make credibility judgments about the testimony presented at petitioner's trial or to weigh conflicting testimony.").

Here, as in prior cases, "the jury's decision was largely a matter of choosing whether to believe [Franza's] version of the events [as presented largely through counsel's summation and questions to other witnesses, since Franza did not testify] or to believe the version offered by the State. The jury chose to believe the State's witnesses, despite the inconsistencies in the evidence…. We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence." *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir.1981); *accord, e.g., Williams v. Bennet*, 1998 WL 236222 at *5; *Robinson v. Warden*, 984 F.Supp. at 806–07; *Ehinger v. Miller*, 942 F.Supp. at 935; *Vera v. Hanslmaier*, 928 F.Supp. at 284. The jury here obviously resolved the

conflicting versions of events and disbelieved the defense's version.

### 2. Appellate Counsel's Argument That There Was No Probable Cause to Issue the Search Warrant

Franza alleges that counsel's argument that there was no probable cause to issue the search warrant was only "66 typed lines and 2½ pages long" and did not mention key facts. (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 40–47; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 54–56.) Appellate counsel argued that there were no facts before the Magistrate Judge showing that evidence of the purported criminal activity would be found at Franza's residence. (Franza Pet. Ex. 3: Franza 1st Dep't Br. at pp. 24–26.) Although counsel might have included a few more specifics, such appellate advocacy does not approach what is necessary for an ineffective assistance of counsel claim to prevail. *See, e.g., Singletary v. Smith*, No. 96–CV–643, 1997 WL 134552 at *2 (N.D.N.Y. March 21, 1997) (Pooler, D.J.) (rejecting petitioner's claim that defense counsel made motion to suppress too late, failed to allege an absence of probable cause and failed to litigate the motion aggressively, because the record showed that more aggressive litigation would not have changed the outcome since the trial court would not have invalidated the warrant); *Nelson v. Smith*, 618 F.Supp. 1186, 1192–93 (S.D.N.Y.1985) (counsel was not ineffective for not challenging a search warrant's validity).

### 3. Appellate Counsel's Argument That Erroneous Evidentiary Rulings Deprived Franza of a Fair Trial

Franza claims that counsel's argument that erroneous evidentiary rulings deprived Franza of a fair trial was only "268 lines and 11 pages long," failed to recite the relevant facts, did not discuss why the rulings were prejudicial, and the First Department found it to be without merit. (Franza Pet. Ex. 27: Coram Nobis Aff.

¶¶ 48–54; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 56–57). Franza's objection here boils down to his view that this section in counsel's brief "was not worthy of inclusion." (Coram Nobis Aff. ¶ 54; *accord*, Coram Nobis Br. at 57.) Even if that were true, inclusion of a weaker argument leads to a finding of ineffective assistance only if appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994); *see also* cases cited at page 13 above. Franza has not shown that his appellate counsel omitted any significant appeal issues. (*See* Points I.B.5–9 below.)

Moreover, the Court cannot say that counsel's evidentiary arguments all were weak. For example, appellate counsel argued that the trial court erred in allowing the police and Myra Franza to testify that she wrote "sent" and "husband" in answer to police questions at the scene of her shooting, *i.e.*, her opinion that her husband sent the shooter. (Franza Pet. Ex. 3: Franza 1st Dep't Br. at 27–29.) Appellate counsel's argument that this was classic hearsay and prejudicial opinion testimony, while not ultimately persuasive to the First Department, was coherently and powerfully argued.

### 4. Appellate Counsel's Argument That the Circumstantial Evidence Charge Was Flawed

 Franza alleges that counsel's argument that the circumstantial evidence charge was flawed was only "120 lines and 3 pages," cited only state law, did not adequately cite to the record, and failed to address "the exclusion concept . . . , in that, any circumstantial evidence fact not so proved must be disregarded." (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 55–61; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 57–59.) Appellate counsel argued that the trial judge's circumstantial evidence charge was unclear and therefore a rever-

sal was warranted under New York law. (Franza Pet. Ex. 3: Franza 1st Dep't Br. at pp. 38–40.)

The New York Court of Appeals has held that a circumstantial evidence charge must contain two elements: (1) that the guilt should flow naturally from the proved facts and (2) that the facts proved must exclude any reasonable hypothesis of innocence: " 'The oft-stated rule with respect to convictions based exclusively upon circumstantial evidence is that for guilt to be proven beyond a reasonable doubt the hypothesis of guilt should flow naturally from the facts proved, and be consistent with them; and the facts proved must exclude 'to a moral certainty' every reasonable hypothesis of innocence.' " *People v. Ford,* 66 N.Y.2d 428, 441, 497 N.Y.S.2d 637, 644, 488 N.E.2d 458 (1985) (quoting *People v. Benzinger,* 36 N.Y.2d 29, 32, 364 N.Y.S.2d 855, 856, 324 N.E.2d 334 (1974)). The First Department has suggested that a circumstantial evidence charge include:

■ First, the charge should include a statement that the People have to prove beyond a reasonable doubt 'circumstantial facts,' which do not, in and of themselves, establish guilt. The circumstantial facts have to be established by direct evidence. [2] Second, the circumstantial facts must justify the conclusion of guilt beyond a reasonable doubt. [3] Third, the inference of guilt "must flow naturally, reasonably and logically from the facts proved and must be consistent with all such facts proved." [4] Fourth, the "circumstantial facts proved must all be consistent with guilt and inconsistent with innocence." [5] Fifth, the "circumstantial facts proved must exclude to a moral certainty every hypothesis but guilt."

*People v. Rawlins,* 166 A.D.2d 64, 68–69, 569 N.Y.S.2d 635, 638 (1st Dep't 1991) (quoting 1 Committee on Criminal Jury Instructions of the State of New York, *Crim. Jury Instructions* (N.Y.) § 9.05).

In this case, the trial judge included in the jury charge that: "[C]ircumstantial evidence is evidence of facts which are inferred or deduced from the direct evidence.... Circumstantial evidence is the inference which can reasonably be drawn from direct evidence.... In a trial, where circumstantial evidence is presented, the jury must ... apply the usual tests of credibility to determine whether a witness has told the truth about what the witness saw, felt or heard. If the jury accepts those facts as true, then it must use its powers of reasoning and logic to determine whether those facts support he inference beyond a reasonable doubt." (Tr.1919–20.) "[F]or [circumstantial] evidence to be valid the inference or conclusion to be drawn from it must flow naturally from and be consistent with the proving facts and must point to the guilt of the defendant." (Tr. 1921.) "In order for you to convict the defendant in this case it must appear that the inference of guilt is the only one which can be fairly and reasonably drawn from the facts and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis but guilt. If this is the case, then you must draw the inference of guilt. On the other hand, if an inference of non-guilt can also reasonably be drawn after consideration of all credible evidence in the case, then you must draw the inference of non-guilt." (Tr.1921.) Furthermore, the trial court emphatically charged that "each element of any of the crimes submitted to you ... must be proved to your satisfaction beyond a reasonable doubt," that the defendant "is presumed to be not guilty," "until his guilt is proved beyond a reasonable doubt," and that "[t]his burden of proving to your satisfaction guilt of the defendant beyond a reasonable doubt remains upon the prosecution throughout the trial." (Tr.1924–25.) Considered as a whole, the trial judge's jury charge incorporated all five elements of the First Department's (and PJI's) recommended circumstantial evidence charge. Therefore, no matter what appellate counsel argued, he would not have ultimately prevailed before the First Department.

Franza's specific argument that counsel was ineffective for failing to argue that the trial judge omitted from this charge the "exclusion concept" is also unavailing. The New York Court of Appeals requires that a circumstantial evidence charge include the "exclusion concept," often stated as: "the facts proved must exclude 'to a moral certainty' every reasonable hypothesis of innocence.'" *People v. Ford,* 66 N.Y.2d at 441, 497 N.Y.S.2d at 644, 488 N.E.2d 458; *accord, e.g., People v. Benzinger,* 36 N.Y.2d at 32, 364 N.Y.S.2d at 856, 324 N.E.2d 334; 1 Committee on Criminal Jury Instructions of the State of New York, *Crim. Jury Instructions* (N.Y.) § 9.05 (1991). The New York Court of Appeals has held, however, that this precise language need not be quoted verbatim, only that the charge clearly convey the exclusion concept. Thus, in *People v. Morris,* 36 N.Y.2d 877, 372 N.Y.S.2d 210, 334 N.E.2d 10 (1975), the Court of Appeals upheld a charge which did not include the "moral certainty language"; rather, the charge explained the exclusionary rule as follows: "'it must appear that the inference drawn is the only one that can fairly and reasonably be drawn from the facts [and] that any other explanation is fairly and reasonably excluded. If the facts proved permit you to draw (two) inference(s), one of which permits a claim of innocence and the other a finding of guilt, you by law are required to draw the inference which supports the claim of innocence.'" *People v. Morris,* 36 N.Y.2d at 879 & n., 372 N.Y.S.2d at 211 & n., 334 N.E.2d 10; *see also, e.g., People v. Ford,* 66 N.Y.2d at 442, 497 N.Y.S.2d at 644, 488 N.E.2d 458 (citing approvingly the circumstantial evidence charge in *Morris* ); *People v. Gonzalez,* 54 N.Y.2d 729, 730, 442 N.Y.S.2d 980, 981, 426 N.E.2d 474 (1981) ("With respect to the defendant's contention as to the circumstantial evidence charge, it is noted that although the charge as given did not include the words 'exclude to a moral certainty' as requested by the defendant it did nevertheless, in substance, adequately inform the jury as to the burden of proof in a circumstantial evidence case," citing *Morris.*).

In this case, while the trial court did not include the "moral certainty language," like in *People v. Morris,* the trial court clearly explained the exclusionary concept including the core concepts that inference from circumstantial evidence must flow naturally from the facts and exclude any hypothesis of innocence: "[F]or [circumstantial] evidence to be valid *the inference or conclusion to be drawn from it must flow naturally from and be consistent with the proving facts and must point to the guilt of the defendant* .... In order for you to convict the defendant in this case *it must appear that the inference of guilt is the only one which can be fairly and reasonably drawn from the facts and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis but guilt."* (Tr.1921, emphasis added.) This language sufficiently explained the exclusionary rule to the jury. *See, e.g., People v. Ford,* 66 N.Y.2d at 442, 497 N.Y.S.2d at 644, 488 N.E.2d 458; *People v. Gonzalez,* 54 N.Y.2d at 730, 442 N.Y.S.2d at 981, 426 N.E.2d 474; *People v. Morris,* 36 N.Y.2d at 879 & n., 372 N.Y.S.2d at 211 & n., 334 N.E.2d 10.

As for Franza's argument that appellate counsel failed to cite federal cases, as Judge Weinstein explained in *Grey v. Henderson,* 788 F.Supp. 683 (E.D.N.Y. 1991), *aff'd,* 956 F.2d 1161 (2d Cir.1992), failure to cite federal cases does not constitute ineffective assistance:

[Petitioner's] contention that counsel's failure to cite federal cases in his [state] appellate brief is also without merit. [Petitioner] contends that without citing to federal case law, his counsel was constitutionally deficient. [Petitioner] alleges that such a failure to cite federal cases would prevent his claims from being brought in a petition for habeas corpus before a federal court.

A similar type of argument was raised in *Wainwright v. Sykes,* 433 U.S. 72, 97

S.Ct. 2497, 53 L.Ed.2d 594, *reh'g denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977). In *Wainwright*, the Supreme Court ruled that when defense counsel failure to object results in a procedural bar, the default can be remedied by showing cause for the default and actual prejudice. Thus if cause and actual prejudice are established, the fact that counsel erred at trial would not prevent the procedurally barred issue from being heard. Accordingly, if an issue goes to the heart of a constitutional right, appellate counsel's failure to cite a federal case for a particular proposition would not prevent a federal court from reviewing such an issue in a petition seeking a writ of habeas corpus.

Moreover, failure to cite federal case law would not prevent a state court from deciding an issue based on federal law. In *United States ex rel. Patterson v. Neal*, 678 F.Supp. 749 (N.D.Ill.1988), the government alleged that petitioner's ineffective assistance of counsel claim should be barred from review because it was not properly raised on appeal. The court rejected this contention and noted that a party is not required to rely on federal cases to alert a state court to constitutional issues. *Id.* at 753. Rather,

> [a] state court has not had a fair opportunity to consider alleged constitutional violations only if the arguments presented to it do not (a) rely on pertinent federal cases employing constitutional analysis; (b) rel[y] on state cases employing constitutional analysis in like fact situations; (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the Constitution ... [or] alleg[e] a pattern of facts that is well within the mainstream of constitutional litigation.

*Patterson*, 678 F.Supp. at 753, (quoting *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 454 [7th Cir.1984] ).

While these reasons are cited for the proposition of when a state court has been alerted to constitutional issues, they are equally applicable in determining whether a habeas corpus petitioner is correct in asserting that his appellate counsel was ineffective because of failure to cite to federal precedents.

*Grey v. Henderson*, 788 F.Supp. at 697–98. Given Franza's appellate counsel's arguments, his failure to cite federal cases does not constitute ineffective assistance.

### 5. *Appellate Counsel's Alleged Failure to Argue That the Trial Court Erroneously Rejected Franza's CPL § 440.10 Motion*

Franza claims that counsel failed to argue that the trial court erroneously rejected his CPL § 440.10 motion. (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 62–63, 77–87, 257–94; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 59–60,·117–27.) However, Franza instructed appellate counsel not to brief the CPL § 440.10 issue, since Franza was not satisfied with what counsel planned to submit. (*See* Coram Nobis Aff. ¶ 11: "On May 13, 1996, I filed with [the First Department] another Addendum ... informing [the First Department] that I have instructed appellate counsel to remove his CPL § 440.10 argument as being deficient and that I will raise the CPL § 440.10 argument.") This Court therefore has no basis to determine whether appellate counsel's intended argument on the CPL § 440.10 appeal would have been effective or ineffective.

 Moreover, even if Franza had not directed counsel not to brief this issue, the Constitution does not require appointed appellate counsel to raise very claim that his client desires him to raise. The Supreme Court rejected just such an argument in *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983), holding that "[n]either *Anders* nor any other decision of this Court suggests, however, that the indigent [criminal] defendant has a constitutional right to com-

**144**

pel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." The Supreme Court continued: "For judges to second-guess reasonable professional judgment and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*. Nothing in the Constitution or our interpretation of that document requires such a standard." *Id.* at 754, 103 S.Ct. at 3314.

In any event, Franza himself raised—at length—the CPL § 440.10 appeal issues before the First Department, which rejected the claim. While it is true that a pro se often cannot be as effective an advocate as counsel, the First Department found Franza's appeal on this issue to be without merit, and thus Franza cannot satisfy *Strickland's* prejudice prong. *See* cases cited at page 11 above.

Finally, this Court also finds Franza's CPL § 440.10 motion to be without merit, *see* Point II below, and thus appellate counsel's failure to brief it to the First Department could not have prejudiced Franza.

6. *Appellate Counsel's Alleged Failure To Argue That the Trial Court Improperly Read Back Portions of the Handwriting Expert's Testimony to the Jury and Gave the Jury an Improper Exhibit*

Franza claims that appellate counsel's failure to object to the trial court's alleged "improper read back" and "exhibit to the jury" deprived him of effective assistance. (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 173–91; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 86–91.) Franza claims that neither the read back nor the exhibit the trial court gave the jury was responsive to the jurors' requests. (Coram Nobis Aff. ¶¶ 178, 179, 183; Coram Nobis Br. at p. 87.)

The jury's read-back note requested: "Please read back Detective Breslin's testimony that refers to the handwriting on the note on the flower box and the exemplars provided by the defendant ..." (Tr. 1967.) The trial court asked the foreperson to clarify exactly what testimony was requested, and the response was that the jury wanted Detective Breslin's testimony about the handwriting on the flower box note and its comparison to Franza's known handwriting exemplars. (Tr.1968–71.) The jury clarified even further with a subsequent note: "Please re-read the testimony of Detective Breslin about his analysis that allowed him to make a positive identification of the defendant as the writer of the florist note." (Tr.1974.) Before the testimony was read back, the trial judge told the jury

[W]hen we read back testimony, if we're reading back a portion that you believe is not responsive to your request, you'll stop us. If we read back too much, stop us. . . . You see, it is our obligation to comply totally with whatever your request is. And we intend to do that with your cooperation.

(Tr.1991.) The court reporter then began to read back testimony, and the foreperson interrupted, requesting an exhibit to be brought back to the courtroom from the jury room. (Tr.1991–92.) The foreperson described the exhibit—"the exhibit that has 'Franza,' I believe, four times." (Tr. 1992.) The foreperson said he believed it was trial exhibit number 62. (*Id.*) In language quoted with a "spin" by Franza in his coram nobis papers, the trial judge responded, "[t]ake a chance with that one." (Tr.1992.) That exhibit was then brought to the courtroom and put on an easel in front of the jurors, who did not state that it was not what they wanted. (*Id.*) The jury, however, was not shy about making requests—the foreperson asked to have the re-reading back up a bit now that they had the exhibit. (Tr.1992–93.)

The transcript does not reflect what the court reporter read to the jury. (*See*

Tr.1991–93.) At the conclusion of the reading, the jury did not ask to have anything else read back:

> THE COURT: That completes that portion?
>
> FOREPERSON: Okay.
>
> THE COURT: Now, would you like more? I can't ask you if you'd like less because you heard what you heard.
>
> FOREPERSON: I think we'd like to continue discussing.

(Tr.1993.)

 As noted above, the read back the trial judge gave the jury is not in the record. (Tr.1991–93.) Under New York law, claims based on matters that are not in the record may not be raised on direct appeal. *See, e.g., Brown v. Garvin*, No. 93 CV 3510, 1995 WL 561347 at \*1 (E.D.N.Y. Sept.18, 1995) (Petitioner "does not dispute that the 'readback' claim is based on matters that are not in the record. Under New York law, such claims may not be raised on direct appeal") (fn.omitted); *People v. Johnson*, 51 N.Y.2d 986, 987, 435 N.Y.S.2d 713, 714, 416 N.E.2d 1048 (1980) (issue not reviewable because "there is nothing on this record to afford a basis for determination of the question"); *People v. Rene*, 223 A.D.2d 733, 733, 637 N.Y.S.2d 453, 454 (2d Dep't) ("The defendant's contention that his right to be present at all material stages of the proceedings was violated because he was absent during the readback of testimony rests on matters outside the record and is improperly presented on direct appeal."), *appeal denied*, 87 N.Y.2d 1024, 644 N.Y.S.2d 157, 666 N.E.2d 1071 (1996); *People v. Marrero*, 219 A.D.2d 518, 519, 631 N.Y.S.2d 665, 666 (1st Dep't 1995) ("Because defendant did not object or make any record with respect to his claim that the court failed to meaningfully respond to the jury note, the claim is both unpreserved . . . and unreviewable on direct appeal."), *appeal denied*, 87 N.Y.2d 1021, 644 N.Y.S.2d 155, 666 N.E.2d 1069; *People v. Smith*, 206 A.D.2d 102, 113, 618 N.Y.S.2d 649, 656 (1st Dep't 1994) (since materials were not before the trial court, "they are not a part of the record on appeal, and may not be considered by this Court"), *aff'd*, 85 N.Y.2d 1016, 630 N.Y.S.2d 971, 654 N.E.2d 1219, 85 N.Y.2d 1018, 1019–20, 631 N.Y.S.2d 280, 281, 655 N.E.2d 393(1995); *People v. Dudley*, 201 A.D.2d 664, 664, 609 N.Y.S.2d 823, 824 (2d Dep't), *appeal denied*, 83 N.Y.2d 871, 877, 613 N.Y.S.2d 132, 137, 635 N.E.2d 301 (1994); *People v. Harvall*, 196 A.D.2d 553, 555, 601 N.Y.S.2d 146, 148 (2d Dep't) ("The defendant's further claim that the court failed to disclose or respond to a jury note rests on matters which are not contained in the record, and thus may not properly be presented on direct appeal."), *appeal denied*, 82 N.Y.2d 896, 610 N.Y.S.2d 163, 632 N.E.2d 473 (1993); *People v. Messina*, 196 A.D.2d 557, 557, 601 N.Y.S.2d 143, 143 (2d Dep't 1993) ("The defendant claims that his rights were violated when the court failed to read back certain testimony in response to a jury request. However, this claim rests upon matters not contained in the record, and is therefore not properly before this [c]ourt on a direct appeal from the judgment of conviction."), *appeal denied*, 82 N.Y.2d 927, 610 N.Y.S.2d 180, 632 N.E.2d 490 (1994); *People v. Brown*, 192 A.D.2d 666, 666, 598 N.Y.S.2d 717, 717 (2d Dep't) ("The defendant claims that his rights were violated when the jury requested a readback of certain testimony, and the court either failed to respond or did so without notifying counsel. Since this claim rests on matters which are not contained in the record, its presentation on direct appeal is improper."), *appeal denied*, 81 N.Y.2d 1070, 601 N.Y.S.2d 590, 619 N.E.2d 668 (1993); *People v. Noland*, 189 A.D.2d 829, 829, 592 N.Y.S.2d 465, 465 (2d Dep't) ("The defendant claims that his rights were violated when the jury requested trial exhibits, and the court either failed to respond or did so without consulting counsel. Since this claim rests on matters which are not contained in the record, its presentation in direct appeal is improper."), *appeal denied*, 81 N.Y.2d 890, 597 N.Y.S.2d 952,

613 N.E.2d 984 (1993); *People v. Letizia,* 155 A.D.2d 952, 952, 547 N.Y.S.2d 767, 768 (4th Dep't 1989) ("'Since the conduct which is claimed to be improper and prejudicial does not appear in the record, the issue may [not be raised on direct appeal but may] be raised in a proceeding under CPL Article 440.'") (quoting *People v. Cleveland,* 132 A.D.2d 921, 921, 518 N.Y.S.2d 477, 477–78 (4th Dep't), *appeal denied,* 70 N.Y.2d 749, 520 N.Y.S.2d 1025, 514 N.E.2d 1377 (1987)), *appeal denied,* 75 N.Y.2d 814, 552 N.Y.S.2d 565, 551 N.E.2d 1243, *cert. denied,* 498 U.S. 826, 111 S.Ct. 81, 112 L.Ed.2d 54 (1990). Therefore, it would have been futile for Franza's appellate counsel to have raised this claim on direct appeal.[7]

■ Moreover, because trial counsel did not object to the readback or the exhibit that was given to the jurors, this argument was not preserved for state appellate review. *See, e.g.,* N.Y. CPL § 470.05(2) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."); *People v. Rivera,* 233 A.D.2d 344, 344, 649 N.Y.S.2d 477, ⸺ (2d Dep't 1996) ("defendant's contention that the court denied him an opportunity to participate in formulating a response to a note sent by the jury during deliberations is not preserved for appellate review .... [because] [d]efense counsel did not object.... Defense counsel's silence at a time when any error by the court could have been obviated by a timely objection renders the present claim unpreserved for appellate review."), *appeal denied,* 89 N.Y.2d 946, 655 N.Y.S.2d 897, 678 N.E.2d 510 (1997); *People v. Wilson,* 188 A.D.2d 405, 406, 591 N.Y.S.2d 397, 398 (1st Dep't 1992) ("Defendant ... failed to object to the trial court's response to the jury's request for readback of testimony regarding defendant's post-arrest statement to the police, and thus failed to preserve any claim of error for appellate review as a matter of law."), *appeal denied,* 81 N.Y.2d 846, 849, 595 N.Y.S.2d 745, 749, 611 N.E.2d 784 (1993); *People v. Hollis,* 216 A.D.2d 17, 17, 628 N.Y.S.2d 264, 264 (1st Dep't) ("[d]efendant's claim that the trial court pressured the jury into rescinding their request for a readback of the entire trial testimony ... is unpreserved for review" since defendant did not object), *appeal denied,* 86 N.Y.2d 796, 632 N.Y.S.2d 509, 656 N.E.2d 608 (1995); *Reyes v. Artuz,* No. CV 93 5543, 1996 WL 391700 at *5 (E.D.N.Y. July 9, 1996) (dismissing ineffective assistance of appellate counsel claim where issue was not presented for appeal because trial counsel did not object to the court's decision to let the jury view exhibits in the jury room).

Finally, even if this Court were to consider the merits of this claim, the erroneous readback/exhibit claim is frivolous. It is based solely on Franza's supposition as to what the jury wanted. (*See* Coram Nobis Aff. ¶ 180; Coram Nobis Br. at pp. 87–88.) The jury, not Franza, clearly was the best judge of whether it received the exhibit and testimony that it wanted. A reading of the transcript shows that this jury was not shy about asking for what it wanted. (Tr.1968–71, 1974, 1991–93.) After the exhibit and the readback, the trial court gave the jury the opportunity to ask for more, and the jury indicated its satisfaction with the readback. (Tr.1993.) Franza's claim is frivolous.

For all of these reasons, appellate counsel was not ineffective for not raising this unpreserved, unmeritorious claim.

---

7. New York law provides that claims based on conduct not in the record can be raised in a motion to vacate the judgment. CPL § 440.10(1)(f). Franza did not claim in his CPL § 440.10 motion that the judge improperly read back portions of the transcript or gave the jury the wrong exhibit.

### 7. Appellate Counsel's Alleged Failure to Argue That a "Secret" Pretrial Suppression Hearing Was Held Without Franza

Franza claims that on February 13, 1992, during voir dire jury selection, Detective Giorgio testified at a "reopened hearing, pertaining to misfiled papers." (Franza Pet. Ex. 27: Coram Nobis Aff. ¶ 196; Franza Pet. Ex. 28: Coram Nobis Br. at p. 92; Franza Pet. Ex. 37: 2/13/92 Voir Dire Minutes, pp. 110–33.) Franza claims that the pretrial transcripts show only that Detective Giorgio testified at hearings on January 22 and 23, 1992. (Coram Nobis Aff. ¶ 196; Coram Nobis Br. at p. 92.) Further, according to Franza, none of the court's "endorsement sheets," which Franza claims are "completely accurate" (Coram Nobis Aff. ¶ 197; Coram Nobis Br. at p. 92), show that Detective Giorgio testified on February 13, 1992. (*See* Franza Pet. Ex. 38: Endorsement Sheets; Coram Nobis Aff. ¶¶ 197–98; Coram Nobis Br. at pp. 92–93.) Franza deduces from this "evidence" that a secret pretrial suppression hearing took place on February 13, 1992 and "[i]t is apparent, [that] the Department of Corrections would not produce" Franza to attend the hearing. (Coram Nobis Aff. ¶¶ 199–200; Coram Nobis Br. at p. 93.)

New York courts have long recognized the "presumptions of . . . validity and regularity" attached to criminal proceedings, which may only be overcome by "substantial evidence to the contrary." *People v. Harris,* 61 N.Y.2d 9, 16, 471 N.Y.S.2d 61, 64, 459 N.E.2d 170 (1983); *People v. Smyth,* 3 N.Y.2d 184, 187, 164 N.Y.S.2d 737, 739, 143 N.E.2d 922 (1957); *accord, e.g., Benn v. Stinson,* 917 F.Supp. 202, 207 (S.D.N.Y.1995) (Stein, D.J. & Peck, M.J.). Furthermore, on appeal in criminal cases, under New York law the appellant bears the "burden to present a clear factual record for review." *People v. Hentley,* 155 A.D.2d 392, 393–94, 547 N.Y.S.2d 876, 878 (1st Dep't 1989), *appeal denied,* 75 N.Y.2d 919, 555 N.Y.S.2d 38, 554 N.E.2d 75 (1990);

*accord, e.g., Benn, v. Stinson,* 917 F.Supp. at 207–08; *see also, e.g., People v. Olivo,* 52 N.Y.2d 309, 320, 438 N.Y.S.2d 242, 247, 420 N.E.2d 40 (1981).

Here, the very minutes of the allegedly "secret" hearing which Franza has submitted to the Court show that Franza's trial counsel was present and indeed was the attorney who questioned Detective Giorgio. (Franza Pet. Ex. 38: 2/13/92 Minutes at pp. 110–33.) The minutes do not state whether Franza was present. (*Id.*) The law in New York is clear, however, that a court clerk's or court reporter's failure to note a defendant's presence is insufficient to rebut the presumption of regularity. *See, e.g., People v. Diaz,* 212 A.D.2d 412, 622 N.Y.S.2d 686, 687 (1st Dep't 1995) (defendant's claim that Spanish interpreter not present at sentencing is denied; while transcript first indicates interpreter's presence in the latter pages, "defendant failed to rebut the presumption of regularity that the interpreter was present when the proceedings commenced and that the entry regarding the interpreter's presence was made by the stenographer belatedly"); *People v. Robinson,* 191 A.D.2d 523, 523, 595 N.Y.S.2d 56, 57 (2d Dep't) (defendant could not overcome presumption of regularity despite the fact that Sandoval hearing minutes did not indicate whether or not he was present, and defendant offered "no additional evidence supporting his conclusory assertion that he was not present"), *appeal denied,* 81 N.Y.2d 1018, 600 N.Y.S.2d 207, 616 N.E.2d 864 (1993); *People v. Pichardo,* 168 A.D.2d 577, 577, 562 N.Y.S.2d 792, 793 (2d Dep't 1990) ("Although during trial, the court clerk did not, on certain occasions, ministerially record that the defendant was present in the courtroom, the defendant offers no additional evidence supporting his conclusory assertion that he was absent on the days in question and has thereby failed to rebut the presumption of regularity which attached to the proceedings."), *appeal denied,* 77 N.Y.2d 965, 570 N.Y.S.2d 499, 573 N.E.2d 587 (1991); *accord, e.g., Benn v.*

*Stinson,* 917 F.Supp. at 208. Thus, neither in any state court proceedings nor here has Franza presented sufficient evidence to rebut the presumption of regularity.

For all these reasons, appellate counsel's decision not to raise this issue was a valid strategic decision, and not ineffective assistance.

### 8. *Appellate Counsel's Alleged Failure to Argue That Trial Counsel Was Ineffective by Not Objecting to the Prosecutor's Summation*

 Franza claims that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for failing to object to certain of the prosecutor's remarks on summation. (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 205–53; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 94–116.)

 Trial counsel's decision not to object to the prosecutor's statements in summation may be attributed to trial tactics, and thus he was not ineffective. *See, e.g., Cuevas v. Henderson,* 801 F.2d 586, 592 (2d Cir.1986) (where prosecution's summation was appropriate, counsel's failure to object did not constitute ineffective assistance of counsel), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987); *Duncan v. Griener,* 97 Civ. 8754, 1999 WL 20890 at *10 (S.D.N.Y. Jan.19, 1999) (since trial counsel's failure to object would have been fruitless, "the failure to so object is not evidence of ineffective assistance of counsel"); *Perez v. United States,* 89 CR 800, 96 Civ. 7702, 1997 WL 661426 at *4 (S.D.N.Y. Oct.23, 1997) ("Defense counsel's failure to object [to the prosecutor's summation] cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless."); *Boyd v. Hawk,* 965 F.Supp. 443, 452 (S.D.N.Y. 1997) (Batts, D.J. & Peck, M.J.) ("Counsel's . . . alleged failure to make objections [to prosecutor's summation] may be attributed to counsel's trial tactics."); *Gatto v. Hoke,* 809 F.Supp. 1030, 1039 (E.D.N.Y.)

("counsel's failure to object to the prosecutor's summation represents his tactical decision to avoid underscoring the prosecutor's statements so as to draw the jury's attention to them"), *aff'd mem.,* 986 F.2d 500 (2d Cir.1992); *Arce v. Smith,* 710 F.Supp. 920, 926–27 (S.D.N.Y.) ("[I]nasmuch as the summation comments did not rise to the level of constitutional error or reversible error under state law, petitioner was not prejudiced by counsel's failure to object to them and counsel cannot be found to have been ineffective"), *aff'd,* 889 F.2d 1271 (2d Cir.1989), *cert. denied,* 495 U.S. 937, 110 S.Ct. 2185, 109 L.Ed.2d 513 (1990).

 Specifically, Franza argues that even though trial counsel objected to the prosecutor's comment during summation that defense counsel did not discuss certain evidence in defense's summation, trial counsel was ineffective for failing to move for a mistrial or curative instructions after the judge overruled his objection to the prosecutor's statement. (Coram Nobis Aff. ¶¶ 216–23; Coram Nobis Br. at pp. 98–102.) Trial counsel's decision not to move for a mistrial based on the prosecutor's comments was tactical and did not amount to ineffective assistance. Certainly, appellate counsel was not ineffective for failing to raise the issue. Moreover, the prosecutor's comments were not improper—it is perfectly proper for the prosecutor's summation to point out to the jury what defense counsel did not explain or even refer to in his summation.

Franza also claims that the prosecutor's summation shifted the burden of proof. (Coram Nobis Aff. ¶ 223; Coram Nobis Br. at p. 103.) The prosecutor called on the jury to remember the evidence admitted at trial, particularly the handwriting evidence, and to find defendant guilty. (Tr. at 1821–22.) The prosecutor's comments did not attempt to shift the burden of proof to Franza. Any objection to these comments would have been useless; trial counsel was not inef-

fective for failing to object, and appellate counsel certainly was not ineffective for not raising the issue on direct appeal. *See, e.g., United States v. Rivera,* 971 F.2d 876, 884 (2d Cir.1992) (no error for prosecutor to comment in summation on a "defendant's failure to call witnesses to support his arguments" or failure to cross-examine a witness about a subject); *Sutton v. Herbert,* 39 F.Supp.2d 335, 341 (S.D.N.Y.1999) (prosecutor's comments during summation that only the petitioner and no witnesses testified that petitioner suffered injuries, was a fair assessment of the evidence and did not shift burden of proof, since "[c]ommenting on the evidence presented at trial is a typical—indeed necessary—part of any summation, and is not error"); *Duncan v. Griener,* 1999 WL 20890 at *10 (dismissing petitioner's claim that his counsel was ineffective for failing to object to summation that allegedly shifted the burden of proof to the defense because "[t]he summation did not attempt to shift the burden to the defense .... Thus this objection would have been fruitless and the failure to so object is not evidence of ineffective assistance of counsel."); *Arce v. Smith,* 710 F.Supp. at 926–27 & n. 2 (dismissing petitioner's ineffective assistance claim based on counsel's failure to object to prosecutor's summation where prosecutor's comment "was nothing more than a request to the jury to draw a legitimate inference from the evidence"). Moreover, the trial court's instructions to the jury clearly informed them that the State had the burden of proof (Tr.1924–25, 1932–35, 1940–41, 1944, 1959), thus obviating any error from the prosecutor's comments. *See, e.g., United States v. Rivera,* 971 F.2d at 884–85; *United States v. Walker,* 835 F.2d 983, 988 (2d Cir.1987); *McEachin v. Ross,* 951 F.Supp. 478, 482–83 (S.D.N.Y. 1997); *Reeves v. Keane,* 92 Civ. 2499, 1993 WL 147538 at *7–8 (S.D.N.Y. May 5, 1993), *aff'd mem.,* 23 F.3d 396 (2d Cir.), *cert. denied,* 512 U.S. 1241, 114 S.Ct. 2752, 129 L.Ed.2d 869 (1994); *Par-*

*tee v. Henderson,* 87 Civ. 1688, 1990 WL 26917 at *11 (S.D.N.Y. Feb.28, 1990).

Franza also argues that the prosecutor denigrated defense counsel by stating that defense counsel was a more elegant speaker, and by stating that defense counsel used the term "circumstantial evidence" as a buzz word. (Coram Nobis Aff. ¶¶ 224–29; Coram Nobis Br. at pp. 103–05.) " '[A] prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation.' " *United States v. Jaswal,* 47 F.3d 539, 544 (2d Cir.1995) (rejecting prosecutorial misconduct claim where prosecutor called the defense case a "fairy tale") (quoting *United States v. Rivera,* 971 F.2d at 884). Moreover, the prosecutor had every right to respond to the points defense counsel made in summation. *See, e.g., Tejada v. Senkowski,* 92 Civ. 3012, 1993 WL 213036 at *2 (S.D.N.Y. June 16, 1993) (dismissing petitioner's claim that the prosecutor's summation was improper because the "argument identified by [petitioner] as improper ... responded directly to the defendant's argument"), *aff'd,* 23 F.3d 397·(2d Cir.), *cert. denied,* 513 U.S. 887, 115 S.Ct. 230, 130 L.Ed.2d 155 (1994). Trial counsel was not ineffective for failing to object, and appellate counsel certainly was not ineffective for not raising the issue on appeal.

Franza also takes issue with the way the prosecutor summarized the trial evidence. (Coram Nobis Aff. ¶¶ 230–44; Coram Nobis Br. at pp. 105–13.) The prosecutor's job on summation is to summarize the evidence presented at trial in the most persuasive way possible. *See, e.g., Sutton v. Herbert,* 39 F.Supp.2d at 341 (prosecutor's comments during summation were proper; "[c]ommenting on the evidence presented at trial is a typical—indeed necessary—part of any summation, and is not error"). Trial counsel's failure to object, and appellate counsel's decision not to raise the issue on appeal, was not ineffective assistance.

Finally, "the law is settled that 'federal habeas relief is not available on

the basis of improper prosecutorial statements at trial unless the errors, in context of the summation as a whole, were so fundamentally unfair as to deny petitioner a fair trial.'" *Tejada v. Senkowski,* 1993 WL 213036 at *3; *see also, e.g., Donnelly v. De Christoforo,* 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974); *Fox v. Mann,* 71 F.3d 66, 72 (2d Cir.1995); *Floyd v. Meachum,* 907 F.2d 347, 355 (2d Cir.1990) (quoting *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986)); *Edmonds v. McGinnis,* 11 F.Supp.2d 427, 437 (S.D.N.Y.1998); *Gaiter v. Lord,* 917 F.Supp. 145, 153 (E.D.N.Y.1996); *Jones v. Kuhlmann,* 93 Civ. 5963, 1995 WL 733649 at *4 (S.D.N.Y. Dec.12, 1995). The Court has read the defense summation (Tr. 1759–812) and prosecution summation (Tr. 1813–906). The prosecutor's challenged comments were responsive to the defense's summation or a fair summary of and comment on the trial evidence. None of the prosecutor's remarks challenged by Franza, in context, rise to the level necessary to qualify for habeas relief. That is even more true here where the claims are not brought directly, but indirectly in the form of a claim that appellate counsel was ineffective for failing to raise trial counsel's alleged ineffectiveness for not objecting to the prosecutor's comments.

Appellate counsel's decision not to argue that trial counsel was ineffective was reasonable and in no way ineffective or prejudicial.

### 9. *Appellate Counsel's Alleged Failure to Argue That Trial Counsel Was Ineffective by Not Submitting a First Degree Assault Charge to the Jury*

 Franza alleges that appellate counsel was ineffective in failing to argue that trial counsel was ineffective for not submitting a first degree assault charge to the jury. (Franza Pet. Ex. 27: Coram Nobis Aff. ¶¶ 309–19; Franza Pet. Ex. 28: Coram Nobis Br. at pp. 130–32.) It appears that Franza is not pursuing this issue on his habeas petition. (*See* Franza Br. at 67.) Even if he were pursuing this claim, however, it lacks merit.

The prosecutor requested that the judge charge the jury with assault as an alternative to attempted murder. (Tr. 1746–49, 1751–52.) Defense counsel opposed the charge. (Tr. 1749–51.) The judge found the State's argument to be "a rather tortured view" of the evidence and denied the assault charge. (Tr. 1746, 1754.) [8]

Trial counsel's strategy was to present a defense denying guilt and fingering Da-Costa's enemies (*e.g.,* Tr. 318–19, 1763–65, 1773, 1779–81, 1792–94, 1800–11), "a strategy that 'practically precludes a request for an instruction on a lesser included offense.'" *Yu v. United States,* 97 Civ. 2736, 1997 WL 423070 at *3 (S.D.N.Y. July 29, 1997); *see also, e.g., United States ex rel. Johnson v. Vincent,* 507 F.2d 1309, 1313 (2d Cir.) (Lumbard, C.J., concurring) (trial counsel's strategy was to deny guilt. "This attempt to have [petitioner] completely exonerated would have been seriously jeopardized if the jury was given the additional choice of finding [petitioner] guilty of assault. As such the failure of [petitioner's] appellate counsel to raise the refusal to charge a lesser included offense on appeal" is not ineffective assistance), *cert. denied,* 420 U.S. 994, 95 S.Ct. 1435, 43 L.Ed.2d 678 (1975); *Vasquez v. United States,* 96 Civ. 2104, 91 Cr. 153, 1997 WL 148812 at *2 (S.D.N.Y. March 28, 1997) (dismissing petitioner's ineffective assistance claim because counsel's decision not to request a lesser included offense instruction was "a strategic decision that 'fit in with petitioner's overall defense theory . . .' [and] a strategic decision cannot be held to fall below 'an objective standard of

---

**8.** Franza has simply misunderstood what the trial judge said. Franza claims that the judge found the evidence of murder to be "tortured" and that the evidence supported only assault. (Franza Br. at 64–72.) The trial transcript shows that Franza has it completely backwards. (*See* Tr. 1746, 1754.)

reasonableness' and therefore cannot satisfy the first [*Strickland*] prong"); *Rios v. United States*, No. CV–91–4384, 1992 WL 328931 at *6–7 (E.D.N.Y. Oct.13, 1992) ("Courts have declined to find ineffective assistance of counsel where counsel pursues an exculpatory defense although such a choice practically precludes a request for an instruction on. a lesser included offense.... The tactical decision to pursue a complete, exculpatory defense rather than a partial one enjoys substantial deference.... Having presented no evidence on a partial defense, counsel had no reason or basis to request an instruction on the lesser included offense."); *Van Allen v. Coughlin*, 90 Civ. 7342, 1991 WL 64175 at *4 (S.D.N.Y. April 16, 1991) (petitioner's "claim that [his] counsel should have included a lesser included offense charge ... [does not] show ineffective assistance of counsel. The inclusion of a lesser offense would have cut against counsel's strategy of seeking an acquittal by discrediting the testimony of [the] victims, many of whom had attempted to extort money from [petitioner]. Therefore, counsel's decision not to include such a charge falls within the realm of lawyer competence."); *Colon v. Smith*, 723 F.Supp. 1003, 1008 (S.D.N.Y. 1989) ("A failure to request charges on all possible lesser included offenses may be proper trial strategy ... and this decision therefore did not constitute ineffective assistance of counsel.").

Appellate counsel was not ineffective for not claiming on appeal that trial counsel's reasonable strategy of objecting to inclusion of the lesser included assault charge was ineffective.

## II. *THE TRIAL COURT'S DENIAL OF FRANZA'S CPL § 440.10 MOTION IS NOT COGNIZABLE IN A HABEAS PETITION, BUT IN ANY EVENT, THE DENIAL DID NOT VIOLATE FRANZA'S DUE PROCESS OR EQUAL PROTECTION RIGHTS*

Franza's other main habeas ground is his claim that the trial court's denial of is

post-conviction CPL § 440.10 motion constituted a denial of his constitutional due process and equal protection rights. (Pet. ¶ 12(A); *see* Pet. at pp. 34–36.) Franza argues that the trial court "committed error by its failure to adhere to the statutory mandate of C.P.L. § 440.30 and follow the dictates of the [New York] Court of Appeals." (Pet. at 35.)

### A. *Procedural Defects in a CPL § 440.10 Proceeding Are Not Cognizable in Federal Habeas Review*

■ All the circuits that have considered the issue, except one, have held that "federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1777, 143 L.Ed.2d806 (1999); *accord, e.g., Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.1999); *Roberts v. Champion*, 131 F.3d 152 (table), 1997 WL 741166 at *3 (10th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1814, 140 L.Ed.2d 952 (1998); *Villafuerte v. Stewart*, 111 F.3d 616, 632 n. 7 (9th Cir.1997) (claim that petitioner was denied due process in state habeas proceeding is "not addressable in a section 2254 proceeding"), *cert. denied*, —— U.S. ——, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998); *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.) (per curiam) ("Unless state collateral review violates some independent Constitutional right, such as the Equal Protection Clause, ... errors in state collateral review cannot form the basis for federal habeas corpus relief."), *cert. denied*, 519 U.S. 907, 117 S.Ct. 266, 136 L.Ed.2d 190 (1996); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir.1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. An attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the

detention itself.'"), *cert. denied*, 518 U.S. 1022, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir.1993); *Lancaster v. Barnes*, 953 F.2d 1391 (table), 1992 WL 11324 at *3 (10th Cir.1992); *Williams–Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir.), *cert. denied*, 495 U.S. 936, 110 S.Ct. 2183, 109 L.Ed.2d 511 (1990) (cited with approval in *Banks v. People of State of New York*, 94 Civ. 555, 1994 WL 661100 at *3 (S.D.N.Y. Nov.22, 1994)); *Duff–Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir.1992) ("infirmities in state habeas proceedings do not constitute grounds for federal habeas relief. We look only to the trial and direct appeal."), *cert. denied*, 507 U.S. 1056, 113 S.Ct. 1958, 123 L.Ed.2d 661 (1993); *Smith v. Lockhart*, 882 F.2d 331, 334–35 (8th Cir.1989), *cert. denied*, 493 U.S. 1028, 110 S.Ct. 739, 107 L.Ed.2d 757 (1990); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir.), *cert. denied*, 493 U.S. 1012, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989); *Conner v. Director of Div. of Adult Corrections*, 870 F.2d 1384, 1386–87 (8th Cir.), *cert. denied*, 493 U.S. 953, 110 S.Ct. 363, 107 L.Ed.2d 350 (1989); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1218–19, *on reh'g*, 888 F.2d 1286 (10th Cir.1989), *overruling on other grounds recognized by Davis v. Maynard*, 911 F.2d 415, 417 (10th Cir.1990); *Williams v. Lockhart*, 849 F.2d 1134, 1139 (8th Cir. 1988); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988); *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir.), *cert. denied*, 484 U.S. 838, 108 S.Ct. 122, 98 L.Ed.2d 81 (1987); *Kirby v. Dutton*, 794 F.2d 245, 246–48 (6th Cir.1986); *Vail v. Procunier*, 747 F.2d 277, 277–78 (5th Cir.1984) (per curiam); *Williams v. Missouri*, 640 F.2d 140, 143–44 (8th Cir.), *cert. denied*, 451 U.S. 990, 101 S.Ct. 2328, 68 L.Ed.2d 849 (1981). Only the First Circuit has held to the contrary. *See, e.g., Dickerson v. Walsh*, 750 F.2d 150, 152–54 (1st Cir.1984).

While the Second Circuit has not yet addressed this issue, district court decisions within the Circuit have followed the majority rule. *See, e.g., Sparman v. Edwards*, 26 F.Supp.2d 450, 468 n. 13 (E.D.N.Y.1997) ("the weight of authority holds that in habeas corpus proceedings federal courts do not have jurisdiction to review state court denials of motions for a new trial."), *aff'd*, 154 F.3d 51 (2d Cir. 1998); *Bellamy v. Cogdell*, 802 F.Supp. 760, 772–73 (E.D.N.Y.1991); *Michael v. Dalsheim*, No. CV 90–2959, 1991 WL 99368 at *9 (E.D.N.Y. May 22, 1991); *Turner v. Sullivan*, 661 F.Supp. 535, 540–41 (E.D.N.Y.1987) (claim that trial court violated due process by denying CPL § 440.10 motion without setting out findings, conclusions and its reasoning not cognizable on federal habeas review; "Petitioner has not suggested in what respect the failure to comply with the state rule has violated his federal due process rights. A writ of habeas corpus may not be issued on the basis of a perceived error of state law."), *aff'd*, 842 F.2d 1288 (2d Cir.), *cert. denied*, 487 U.S. 1240, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988).

This Court also agrees with and adopts the majority view. Thus, Franza's vague assertion that the trial court's denial of his CPL § 440.10 motion violated due process and equal protection is not cognizable on federal habeas review.

**B.** *Even if the Court Were to Address Franza's Claim on the Merits, He is Not Entitled to Habeas Relief*

Even if the Court were to address Franza's claim on the merits, the Court would not find the state court's failure to grant Franza's CPL § 440.10 motion sufficient to constitute a denial of his constitutional rights. Franza claims that the state's denial of his CPL § 440.10 motion denied him equal protection and due process because (1) the prosecution "withheld the requested discovery materials and *Brady* materials" and "presented false evidence in its place" (*e.g.,* Franza Br. at 80; Pet. at pp. 17, 30) aided by a prosecutorial conspiracy with defense counsel (*e.g.,* Franza Br. at 83); and (2) Franza's trial counsel was ineffective because he did not use at

trial the exhibits Franza attached to his CPL § 440.10 motion (Franza Br. at 83, Pet. at p. 30). (*See generally* Pet. ¶ 12(A); Pet. at pp. 17–31; Franza Br. at pp. 73–86; Franza Traverse Br. at pp. 6–15.)

### 1. The State Did Not Violate Its Brady Obligations

Franza claims that the photos taken at the scene of Myra Franza and Mendez's shooting are false and contain physical improbabilities, and that the prosecutor withheld the real crime scene photos and investigative reports revealing exactly what transpired at the shooting scene (Pet. at pp. 17–25, 30; Franza Br. at pp. 75–77, 80; Franza Traverse Br. at pp. 8–9); that Myra Franza and Mendez's medical records reveal that they were shot more than six times testified to at trial, and by a .22 caliber gun while only .38 caliber bullets were found at the crime scene (Pet. at pp. 19–20; Franza Br. Pet. at p. 75; Franza Traverse Br. at p. 8); the note accompanying the flowers was planted because it appears in one crime scene photo but not in another photo (Pet. at p. 22; Franza Br. at p. 77); and the Puerto Rico pipe bomb went to the wrong address, therefore the federal express airbill and money orders for the Puerto Rico pipe bomb introduced at trial are fraudulent, and the prosecutor withheld the real "documents pertaining to the explosive mailed to Puerto Rico" (Franza Br. at 78–80; Franza Traverse Br. at pp. 9–10).

▆▆▆ Under *Brady v. Maryland* and its progeny, state as well as federal prosecutors must turn over exculpatory and impeachment evidence, whether or not requested by the defense, where the evidence is material either to guilt or to punishment. *See, e.g., United States v. Bagley,* 473 U.S. 667, 676, 682, 105 S.Ct. 3375, 3380, 3383–84, 87 L.Ed.2d 481 (1985); *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).[9]

Franza concedes that the photographs and police reports that formed the basis of his CPL § 440.10 motion were provided by the prosecution to the defense before trial. (*E.g.,* Franza Traverse Br. at 12 ("while [trial] counsel ... possessed the same discovery materials used as the basis for the [CPL § 440.10] motion, and could have used them to expose the State's fraudulent case or to impeach the State's witnesses, he did not do so .... "))[10] Franza's belief that there must be "real" crime scene photos and other evidence is based solely on his view that the crime scene photos (and other evidence) provided by the prosecution were "false," and his claim of falsity is

9. A defendant's due process rights are only violated if the prosecutor fails to turn over "material" evidence. *E.g., United States v. Gambino,* 59 F.3d 353, 365 (2d Cir.1995) ("information not disclosed to the defense creates constitutional error warranting a new trial only when that information is material"), *cert. denied,* 517 U.S. 1187, 116 S.Ct. 1671, 134 L.Ed.2d 776 (1996); *United States v. Gaggi,* 811 F.2d 47, 59 (2d Cir.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383; *see also, e.g., United States v. Gambino,* 59 F.3d at 365; *Lamberti v. United States,* 22 F.Supp.2d 60, 69–70 (S.D.N.Y.1998) (Kaplan, D.J.). "To determine whether a defendant was deprived of his due process right to a fair trial, the court must evaluate the omission in the light of the entire record: 'If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.' " *United States v. Gambino,* 59 F.3d at 365 (quoting *United States v. Agurs,* 427 U.S. at 112–13, 96 S.Ct. at 2402).

10. *Accord,* Franza Br. at 83 ("The CPL § 440.10 motion exhibits, which [trial] counsel had ..."); Franza 3/29/99 Bail Aff. ¶ 72 ("the CPL § 440.10 motion exhibits, which counsel had before trial"); Franza 11/17/98 Supp. Br. at 11 ("Counsel having the documents from the District Attorney's office and did nothing to stop this fraud."); Franza Traverse Aff. ¶ 31 ("Defense counsel was aware of the fraudulent nature, he had the documents.").

based on his comparison of and findings of alleged inconsistencies in the trial testimony and the photos/evidence. (Pet. at 17–30, 35; Franza Br. at 9–23, 27; Franza Traverse Br. at 6–10.)

Franza's claim of withheld *Brady* material is speculative, conclusory and unsupported, and thus must be rejected. *See, e.g., United States v. Avellino,* 136 F.3d 249, 261 (2d Cir.1998) ("In the absence of a proffer by [defendant] of any nonspeculative basis for inferring that ... the government had not made available to him all pertinent material in its possession, it was well within the discretion of the court to conclude that no evidentiary hearing was necessary."); *United States v. Walker,* No. 94–CR–328, 1998 WL 760260 at *3–4 (N.D.N.Y. Oct.30, 1998) (denying defendant's motion for a new trial based upon withholding of *Brady* evidence, because "[d]efendant's claim of prosecutorial misconduct based on allegations that the government withheld material evidence ... is speculative"); *Harris v. United States,* 9 F.Supp.2d 246, 275 (S.D.N.Y.1998) (denying petitioner's § 2255 habeas petition based upon withheld evidence because "the government does not bear the burden of establishing that documents were not withheld; it is [petitioner's] burden to prove that the government failed to *dis*close evidence favorable to [petitioner]. Conclusory allegations that the government 'suppressed' or 'concealed' evidence do not entitle [petitioner] to relief.") (citations omitted); *United States v. Upton,* 856 F.Supp. 727, 746 (E.D.N.Y.1994) ("As a matter of law, mere speculation by a defendant that the government has not fulfilled its obligations under *Brady v. Maryland* ... is not enough to establish that the government has, in fact, failed to honor its discovery obligations.... The government is under no obligation to turn over that which it does not have."); *Mackey v. Scully,* 91 Civ. 2919, 1991 WL 143703 at *3–4 (S.D.N.Y. July 24, 1991) (denying petitioner's claim that the prosecution introduced false evidence based on the fact that the knife at the murder scene was damaged and the knife introduced at trial was undamaged, and alleging that prosecutors put slashes in the sleeve of the coat they presented at trial, because "[petitioner] merely points to trivial inconsistencies in several witness' testimony, and asserts that those inconsistencies show that the prosecution knowingly used false evidence. His conclusory assertions regarding those contradictions are insufficient to warrant habeas relief."); *Costanzo v. United States,* 758 F.Supp. 869, 875 (S.D.N.Y. 1990) (dismissing petitioner's § 2255 claim that he was wrongly convicted by government witness' perjured testimony because his "claim is groundless and lacking in substance; he asserts no more than thinly veiled and baseless allegations .... The perjury claim must summarily be dismissed ..."); *United States ex rel. Jiggetts v. Follette,* 308 F.Supp. 468, 471 (S.D.N.Y.1970) (dismissing § 2255 habeas petitioner's *Brady* violation claim because "[p]etitioner is engaging in mere unsupported speculation. There is a total lack of any support for his contention that the prosecution suppressed evidence favorable to petitioner and material to the question of his guilt."), *aff'd,* 446 F.2d 114 (2d Cir. 1971).

■ Furthermore, the discrepancies between the crime scene photos and the trial testimony was not "material" to the defense's trial strategy. "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a 'reasonable probability' that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 1565, 131 L.Ed.2d 490 (1995) (quoting *United States v. Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383). It was immaterial to Franza's trial defense whether the crime scene photos were allegedly tampered with or were taken at night instead of during the day, since Franza's trial counsel did not contest at trial that someone attempted to murder the victims; rather, counsel

wisely admitted that someone tried to kill Myra Franza and her family, but that there was no evidence linking Franza to the shooter. (*E.g.*, Tr. at 318–19, 1764–65, 1773, 1779–81, 1794, 1800–11; *see* State Br. at 4 ("As a matter of trial strategy, the defense conceded that the crimes charged had occurred, but contested proof which established petitioner's complicity—primarily handwritten items connecting petitioner to the crimes or establishing his motive."), 12.) Had the allegedly non-disclosed evidence been provided to Franza at trial, there is no reasonable probability that the result would have been different, because counsel reasonably was not pursuing a fabricated evidence defense. *See, e.g., Nieves v. Kelly*, 990 F.Supp. 255, 266–67 (S.D.N.Y.1997) (Cote, D.J. & Peck, M.J.). Franza should not be able to convert that strategic decision into a *Brady* claim. *See also* Point II.B.2 below.

Accordingly, Franza's claim that the State withheld exculpatory evidence is without merit.

### 2. *Franza's Trial Counsel Was Not Ineffective Under the Strickland v. Washington Test For His Failure to Attack the Crime* Scene Photos *and* Similar *Evidence Concerning the Shooting*

Under the applicable legal standards set forth in *Strickland v. Washington*, as discussed at pages 10–14 above, it is clear that Franza's ineffective assistance of trial counsel claim does not meet either prong of the *Strickland* test.

Franza claims that trial counsel's failure at trial to use the exhibits Franza attached to his CPL § 440.10 motion to prove that the prosecution's evidence was false and

that the prosecution knowingly used false evidence, violated his right to effective assistance. (Franza Br. at pp. 83–84; Franza Traverse Br. at pp. 11–12.) Franza's claim fails because it relates to decisions that fall squarely within the ambit of trial strategy. Trial counsel's strategy was to concede that the shooting had occurred but challenge the state's handwriting evidence linking Franza to the shooting. (*E.g.*, Tr. 318–19, 1763–65, 1773, 1779–81, 1792–94, 1800–11.) Franza concedes that trial counsel's decision was a matter of strategy, but Franza contends the strategy was ineffective. (Franza 2/12/99 Reply Aff. ¶ 10 ("As for trial counsel's *strategic* decision not to contest the factual underpinnings of the crimes ... reveals trial counsel's ineffectiveness ...") (emphasis added); Franza 3/29/99 Bail Aff. ¶ 72 ("Exercising an extremely poor tactical decision never revealing the fabrications through utilizing the CPL § 440.10 motion exhibits, which counsel had before trial.").) [11]

■ "Generally, the decision whether to pursue a particular defense is a tactical choice which does not rise to [the] level of a constitutional violation.... [T]he habeas court 'will not second-guess trial strategy simply because the chosen strategy has failed ...' especially where the petitioner has failed to identify any specific evidence or testimony that would have helped his case if presented at trial." *Jones v. Hollins*, 884 F.Supp. 758, 765–66 (W.D.N.Y.) (citations omitted), *aff'd*, 89 F.3d 826, 1995 WL 722215 (2d Cir.1995); *see also, e.g., United States v. Vegas*, 27 F.3d 773, 777–78 (2d Cir.) ("As is often the case when convicted defendants complain after-the-fact of their lawyers' trial performance, we

---

11. Franza also contends that if counsel had used the CPL § 440.10 documents at trial, "[s]uch documents would of [sic] proved beyond a reasonable doubt, a defense that someone else was responsible for the shooting incident, not petitioner." (Franza Traverse Br. at 9.) But the state never contended that Franza was the shooter; rather, the state's theory was that Franza hired someone to shoot Myra

Franza. Thus, there was no need for the defense to "prove" that Franza was not the shooter, since the state never contended that he was. Whether Myra Franza and her mother were shot six times or eleven, with 38 or 22 caliber bullets, there can be no question that they were shot. Franza's post-trial analysis of the evidence was not an effective trial strategy to pursue.

find that the choices made by the attorney were matters of trial strategy; because counsel's strategy was a reasonable one, these choices do not show incompetence"; not ineffective to pursue entrapment defense rather than innocence defense), *cert. denied,* 513 U.S. 911, 115 S.Ct. 284, 130 L.Ed.2d 200 (1994); *Lawson v. Caspari,* 963 F.2d 1094, 1096 (8th Cir.1992) (counsel not ineffective for failing to call alibi witnesses he did not believe were credible, especially where counsel "presented a theory of the case by pointing out the 'weaknesses in the state's case and rais[ing] serious questions about the credibility of the state's sole eyewitness.'"); *Mills v. Scully,* 826 F.2d 1192, 1197 (2d Cir.1987) (not ineffective assistance to forego use of witness's contradictory grand jury testimony where it poses greater risks than benefits); *Farrington v. Senkowski,* 19 F.Supp.2d 176, 179 (S.D.N.Y.1998) (counsel not ineffective for strategic decision not to introduce videotaped statement he thought would be inculpatory as well as exculpatory); *Geraci v. Senkowski,* 23 F.Supp.2d 246, 255–56 (E.D.N.Y.1998) ("Trial counsel's decision not to call … witness"—to give trial testimony that contradicted his grand jury testimony and if the jury believed it was a result of defendant's threats, would have undercut the testimony of a key defense witness—"constituted the trial strategy of an experienced and sought-after criminal defense attorney. The petitioner cannot obtain habeas relief [based upon ineffective assistance of counsel] by arguing otherwise."); *Nieves v. Kelly,* 990 F.Supp. 255, 264–65 (S.D.N.Y. 1997) (Cote, D.J. & Peck, M.J.) (counsel not ineffective for not pursuing alibi defense that petitioner had minutes before committed another robbery so he could not have committed the robbery in this case); *Briecke v. People of New York,* 936 F.Supp. 78, 83 (E.D.N.Y.1996) ("counsel's strategic decision to pursue an insanity defense, and not to conduct a substantial investigation into an intoxication defense, was informed and reasonable" where peti-

tioner had a history of psychiatric problems and there were factual impediments to raising intoxication defense); *Johnson v. Mann,* 92 Civ.1909, 1993 WL 127954 at *1 (S.D.N.Y. April 20, 1993) (counsel not ineffective for strategic decision to attack identification of petitioner rather than to rely on an "inherently suspect" alibi defense); *Munoz v. Keane,* 777 F.Supp. 282, 288–89 (S.D.N.Y.1991) ("Given the overwhelming evidence that [petitioner] participated in the drug transaction at issue, it was reasonable for defense counsel to conclude, as a strategic matter, that presenting testimony of the alleged alibi witnesses would be damaging to [petitioner's] case."), *aff'd sub nom, Linares v. Senkowski,* 964 F.2d 1295 (2d Cir.), *cert. denied,* 506 U.S. 986, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); *Minor v. Henderson,* 754 F.Supp. 1010, 1019–20 (S.D.N.Y.1991) (counsel not ineffective for not having petitioner put on overcoat or show jury his teeth since this was "clearly a matter of trial tactics, strategy and style").

■ Franza's defense that the crime scene evidence was fabricated would not have lead the jury to doubt Franza's guilt. Whether the crime scene photos were accurate or not, there was ample evidence, including eyewitness testimony from Myra Franza and her mother, that a man came into the apartment and tried to kill them by shooting Myra Franza once in the face and shooting her mother five times in addition to stabbing her. Nothing about the crime scene photos helped convict Franza. Rather than focusing on the veracity of the crime scene photos, counsel reasonably tried to persuade the jury that DaCosta's enemies were responsible for the attempted murders (*e.g.,* Tr. 257–64, 1609–26, 1809–11), and that Franza had a new girl friend and did not have a motive to retaliate against his estranged wife for leaving him (*e.g.,* Tr. 1586–602, 1792–93), and that the handwriting evidence was not sufficient to link Franza to the crimes beyond a

 

reasonable doubt (Tr. 1803–08).[12]

Accordingly, it was reasonable for Franza's trial counsel to not have pursued the "fabricated evidence" defense, but instead to have argued reasonable doubt based on problems with the handwriting evidence. Trial counsel's strategy was reasonable; trial counsel was not ineffective.

## CONCLUSION

For the reasons set forth above, Franza's habeas corpus petition should be denied as without merit.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fifteen (15) days [13] from service of this Report to file written objections. *See also* Fed. R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S.

1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

June 7, 1999.

---

**12.** Trial counsel's strategy to discredit the note accompanying the flowers by eliciting from the crime scene detective on cross examination that the note was not attached to the flower box when he arrived at the scene (Tr. 1475–80, 1483) certainly had more jury appeal than Franza's argument that the note appeared in the crime scene photos so it must be fabricated because the crime scene photos were fabricated.

**13.** Franza had requested five additional days for objections in addition to the ten days provided for by Fed.R.Civ.P. 72 (Franza 1/16/99 Mot.), which the Court granted by order dated January 20, 1999. (1/20/99 Order.)